[S. F. No. 4652.   Department One.—May 12, 1908.]

JONAS SALSTROM et al., Respondents, v. ORLEANS BAR GOLD MINING COMPANY, Appellant.

HYDRAULIC MINING—OBSTRUCTION OF STREAM—INJURY TO LAND BY DEBRIS—LACK OF NEGLIGENCE.—An hydraulic miner, who places a bar in the course of a natural stream, and above the same deposits his mining debris, so as to cause a portion of the land of a riparian proprietor to be washed away, and the remaining portion to be covered with detritus, is liable for the resulting damage, irrespective of any question of negligence; and the fact that the miner uses all the care for the protection of the riparian proprietor's land consistent with the conduct of his mining operations is immaterial.

ID.—EVIDENCE OF DAMAGE.—In the present case, the evidence is reviewed and held to sustain the verdict of the jury as to the amount of damage inflicted on the plaintiff's land by the wrongful acts of the defendant.

ID.—LAND AVAILABLE FOR MINING AND AGRICULTURE—MEASURE OF DAMAGES.—The use of land for hydraulic mining, causing a destruction of the upper soil, and its use for agricultural purposes, are necessarily incompatible; and where land available for both of such uses is injured, the utmost that the owner can claim is that the amount of injury be determined upon the basis of the availability of the land for the most valuable use for which it can be used.

ID.—ELEMENTS DETERMINING MEASURE OF DAMAGES.—Where land, a portion of which is available exclusively for hydraulic mining purposes, and the balance of which is available for such purposes and is also available for and used for agricultural purposes, is injured by being covered with mining debris, the true rule as to the measure of damages is this: 1. The value of the growing crop destroyed; 2. As to the land available exclusively for mining purposes, if the cost of repairing the injury by removing the debris would amount to less than the value of the property as it was prior to the injury, such cost would be the proper measure of damage, but if such cost would exceed such value, then the value of the property would be proper measure. As to the land used for agricultural purposes, if such land had a greater value for mining purposes than agricultural purposes, the same rule would apply as in the case of the other land, but if more valuable for agricultural purposes, and it was absolutely destroyed for such purposes, the value of the land is the proper measure.

APPEAL from a judgment of the Superior Court of Humboldt County and from an order refusing a new trial.  G. W. Hunter, Judge.

The facts are stated in the opinion of the court.

· L. F. Puter, Denver Sevier, and Page, McCutchen & Knight, for Appellant.

Gillett & Cutler, and F. A. Cutler, for Respondents.

ANGELLOTTI, J.—This is an appeal from a judgment and an order denying a new trial in an action brought by plaintiffs for damages to their land, alleged to have been caused by unlawful acts of defendant in conducting its hydraulic mining operations.  There was a verdict in plaintiffs' favor for nine thousand dollars.  On motion for new

trial, the trial court ordered that the motion be granted unless plaintiffs remitted all over and above seven thousand dollars, and costs of suit, in which event the motion was to be denied. This plaintiffs did by filing their written consent to the modification of the judgment within the time and in the manner prescribed by the trial court.

Plaintiffs were the owners of a tract of land containing about seventy-eight acres, in Humboldt County, extending on the easterly side to and there fronting on Camp Creek for a considerable distance. The defendant owned land adjoining plaintiffs' land on the creek frontage and running northerly along said creek for a considerable distance above plaintiffs' lands. The theory of plaintiffs' case as shown by the complaint was that defendant, in making a large prospect-cut in its land opposite plaintiffs' land, had thrown a large quantity of gravel, boulders, and earth into the creek, forming a bar therein, and that in operating a placer mine above plaintiffs' premises, it had caused a large amount of "boulders, gravel, detritus and debris" to be placed in the waters of Camp Creek, which were prevented from being carried down said creek past plaintiffs' land solely by reason of said bar, the result being that the waters of the creek were diverted from their natural and ordinary channel and thrown with great force against and upon plaintiffs' land, washing away a portion thereof, with a growing crop of grain thereon, and covering such portion with a deep deposit of gravel and boulders.

1. There was evidence sufficient to sustain the conclusion of the jury that the injury to plaintiffs' land and crop was solely due to the acts of defendant so alleged in the complaint. This was not questioned in defendant's opening brief, which was devoted exclusively to the discussion of alleged errors in instructions given to the jury, and the claim that the damages awarded were excessive. An attempt is made in the closing brief to show that the evidence demonstrates that the injury was in part caused by mining operations by plaintiffs themselves and others, but the record shows that the evidence was conflicting on this proposition, and that there was evidence sufficient to warrant the jury in finding that the acts of plaintiffs and others in no degree contributed to such injury.

2. Complaint is made of the following instruction given to the jury at plaintiffs' request:

"One engaged in mining has a right to deposit his tailings in a running stream to a reasonable extent, but he has no right to flood a lower owner's land, and by depositing tailings and debris thereon to substantially injure or ruin the latter's property although he may have used all reasonable means to prevent such damage. No person or corporation has a right, directly or indirectly, to cover his neighbor's land with mining debris, sand, and gravel or other material so as to injure or damage the same. So I instruct you that if you find upon the evidence that the plaintiffs are in the possession of the land described in the complaint and were in such possession at and during the times therein mentioned, and if you further find that while they were in such possession the defendant caused to be placed in the channel of Camp Creek and upon the lands of plaintiffs a large obstruction, by placing in said creek and upon said land a large mass of earth, gravel, rocks, and boulders which caused the waters of said creek to flow upon and against plaintiffs' land, washing it away and damaging and injuring it, and if you further find that said defendant, after making such obstruction commenced mining operations by the hydraulic process upon its land and above plaintiffs' land and in so doing caused to be placed into Simm's Gulch a large mass of earth detritus, debris, gravel, rocks, and boulders, tailings from its mine, and if you further find that said detritus, debris, gravel, rocks, and boulders came down said gulch into Camp Creek and were thence carried by the waters of Camp Creek down stream to said obstruction and were there by reason thereof diverted to and upon the said land of plaintiffs, damaging and injuring the same, then you should render a verdict for the plaintiffs."

It is said that a portion of this instruction was outside the issues, but we think the whole thereof was pertinent to the issues and in line with the theory of plaintiff's case which was that by reason of the bar placed by defendant in the creek, and its deposit of debris in the creek above such bar, it caused a portion of plaintiffs' soil to wash away, and deposited on the subsoil remaining and on other adjoining land of plaintiffs a large amount of debris.

The instruction is not objectionable in that it ignores the question of negligence on defendant's part. It is thoroughly established that no matter how carefully the miner may con-

duct his operations, he has no lawful right to flood or wash away his neighbor's land, or deposit mining debris thereon, to its injury, and that if by the deposit of mining debris in the stream he causes such a result, he is liable for the resulting damage. The fact that he uses all the care for the protection of his neighbor's property consistent with the successful conduct of his mining operations is immaterial. (See 2 Lindley on Mines, sec. 843; *Hill* v. *Smith*, 27 Cal. 481; *Robinson* v. *Black Diamond Coal Co.*, 57 Cal. 412, [40 Am. Rep. 118]; *Hobbs* v. *Amador etc. Co.*, 66 Cal. 161, [4 Pac. 1147]; *Fitzpatrick* v. *Montgomery*, 20 Mont. 181, [63 Am. St. Rep. 62, 50 Pac. 416].) The instruction was not objectionable on the ground that it was argumentative, or contradictory and confusing.

3. It cannot be held that the evidence was not sufficient to support a conclusion that the damage to plaintiffs amounted to nine thousand dollars, which was the amount of the verdict. The evidence on this point was given entirely by plaintiffs' witnesses, defendant making no attempt to contradict such witnesses, and contenting itself with its effort to show that the damage was not caused by its acts. There is some difference between counsel on this appeal as to the quantity of land destroyed and injured, defendant's counsel asserting that only some three acres were thus affected, while plaintiffs declare the quantity to have been over eight acres. There was ample evidence to sustain plaintiffs' counsel in this regard. Plaintiff Jonas Salstrom testified that the portion of his land available for agricultural purposes and which he was engaged in farming extended to a certain line pointed out by him on the ground to a surveyor, and that the soil so available had been washed away as a consequence of defendant's acts to the present line of his agricultural land. The surveyor testified that the amount of land between these lines was 5.10 acres. It was further made to appear that extending from the original line of such farming land to Camp Creek, there were about four acres of mining ground included in plaintiffs' lines as stated in the complaint, only one of which had been mined, leaving three acres still available for mining purposes. Whatever uncertainty there may have been in the complaint in this regard, there can be no doubt that the case was tried upon the theory that the plaintiffs were entitled to recover for all

damage caused by defendant to any portion of the tract described in the complaint, which necessarily included in addition to the portion devoted to farming purposes, the portion in front thereof extending to the creek. As to these three acres, there was evidence to support a conclusion that the land had been so covered with mining debris by the acts of defendant, that it would cost from one thousand dollars to one thousand two hundred and fifty dollars an acre more to mine the land than it would otherwise have cost, and that the value of the land for mining purposes was sufficiently great to warrant such increased expenditure, or, in other words, that the value of the land for mining purposes was reduced by from one thousand dollars to one thousand two hundred and fifty dollars per acre by the acts of defendant. The same is true as to the 5.10 acres used for agricultural purposes, as to which there is testimony to support a conclusion that the value for mining purposes was the same as that of the other three acres. There was in this warrant for a conclusion that the damage amounted to from one thousand dollars to one thousand two hundred and fifty dollars per acre for the whole 8.10 acres, and the growing crop destroyed was shown to be of the value of two hundred dollars.

4. A more serious question is presented by certain instructions on the measure of damage. After correctly instructing the jury in the general language of section 3333, Civil Code, that the amount to be awarded to plaintiffs in the event of a recovery was such amount as would compensate them "for all the detriment proximately caused" by the acts of defendant, not exceeding the amount named in the complaint, the court, at the request of plaintiffs, instructed the jury as follows:—

"In passing upon the question of damages, if you should find that plaintiffs are entitled to recover in this action, you may take into consideration the character and quality of the soil for farming purposes and the value thereof, and also the land for mining purposes prior to the injury complained of and what depreciation in the value thereof has been caused by the acts of defendant, if any."

Of its own motion the court gave this further instruction on the same subject:

"If you believe from the evidence that the plaintiffs are entitled to recover, then in ascertaining the amount of dam-

ages, you will determine from all the evidence as near as may be the value of the crop, if any, on the land washed away, and the difference between the value of their land for any and all purposes, prior to the injury and the value of the same after the injury, and this difference would be the measure of damages to which they would be entitled for permanent injury to their lands."

These were the only instructions given upon this particular matter, except a general instruction that the jury must use their best judgment in assessing damages to do what was right and fair and just. Plaintiffs' claim, sustained by his evidence, was that the 5.10 acres were worth five hundred dollars per acre for farming purposes, to which use they were then, and had been for several years, devoted. The effect of the defendant's acts, according to plaintiffs' claim, was necessarily to destroy the land so far as agricultural purposes were concerned, the soil adaptable to such use having been entirely washed away, and mining debris having been deposited thereon to such an extent that it would cost from one thousand dollars to one thousand two hundred and fifty dollars per acre more to mine the land than it would have cost had this change not been effected. The theory of learned counsel for plaintiffs, as indicated by his brief, appears to be that plaintiffs were entitled to recover as damages both the value of the land for farming purposes, five hundred dollars per acre, and the increase in the cost of mining the land, one thousand dollars to one thousand two hundred and fifty dollars per acre. It appears manifest to us that this cannot be so. No part of the land could be mined except by a process that would entirely destroy it for agricultural purposes, it being absolutely essential to completely remove the upper soil by what is known as ground sluicing in order to get at the gold distributed in the ground beneath. As long as any of the land was used for agricultural purposes, it could not be used for mining purposes, and when used for mining purposes, its value for agricultural purposes was destroyed. The two uses were necessarily absolutely incompatible. Under such circumstances, the most that a plaintiff can rightfully claim is that the amount of injury be determined upon the basis of the availability of the land for the most valuable use for which it can be used. The two uses being absolutely incompatible,

the property cannot well have a higher market value than its value for the most valuable use to which it is adapted. To hold otherwise would necessarily give double compensation to the owner of the land to the extent that the amount awarded exceeded the value for the most valuable purpose for which the land could be used. (See *Northern Pacific & M. Ry. Co.* v. *Forbis,* 15 Mont. 452, [48 Am. St. Rep. 692, 39 Pac. 571], and the cases there cited. Also *Spring Valley W. W.* v. *Drinkhouse,* 92 Cal. 528, [28 Pac. 681].) The true rule as to the measure of damages in the case at bar was this: Plaintiffs were first entitled to the value of the growing crop destroyed. As to the land available exclusively for mining purposes, if the cost of repairing the injury by removing the debris deposited by defendant would amount to less than the value of the property as it was prior to the injury, such cost would be the proper measure of damage. But if such cost of repair or of restoration would exceed such value, then the value of the property would be the proper measure. (See *Hartshorn* v. *Chaddock,* 135 N. Y. 116, [31 N. E. 997], and cases there cited.) As to the land used for agricultural purposes, if such land had a greater value for mining purposes than agricultural purposes, the same rule would apply as in the case of the other land, and on the other hand, if it was more valuable for agricultural than mining purposes, it having been absolutely destroyed for such purpose, plaintiffs would be entitled to the value testified by plaintiff to be five hundred dollars per acre. Defendant's claim is that the instructions on the subject of damage hereinbefore set forth were in line with the theory of counsel for plaintiffs as we have stated, and practically told the jury that they could allow plaintiffs both the amount that the land was worth for farming purposes, and the damage to it as mining property. This we are satisfied was, under the circumstances of this case, and in the absence of other instructions more precisely defining the rights of the parties, the effect of the instructions complained of, the sense in which the jury were reasonably warranted in taking them and in which they probably did take them. They were, therefore, prejudicially erroneous.

The utmost possible effect of such instructions was to improperly increase the verdict against defendant by two thousand five hundred and fifty dollars. It is impossible for us to

say upon what theory the learned judge of the trial court re-
duced the verdict from nine thousand dollars to seven thou-
sand dollars, and consequently such reduction cannot be held
to have obviated in any degree the effect of such error. As,
such effect may be absolutely obviated by a remission of such
amount, and as the proceedings were correct in all other par-
ticulars, so far as this record shows, plaintiffs should not be
compelled to try the case again in the event of their willing-
ness to remit such amount.

It is ordered that in the event that plaintiffs, within thirty
days from this date, file with the clerk of this court their
written consent to a modification of the judgment in their
favor by the deduction of two thousand five hundred and
fifty dollars, leaving the same to stand for four thousand four
hundred and fifty dollars and the costs of suit, said judgment
shall be modified accordingly, and the order denying a new
trial shall be affirmed; but that in the event that said consent
be not so filed within said time, the judgment and order de-
nying a new trial shall be reversed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.