[Civ. No. 6766.   Third Dist.   July 21, 1942.]

LOUISE OSBORN KELL et al., Respondents, v. W. K. JANSEN et al., Appellants.

Geis & Hogle and Milton M. Hogle for Appellants.

Spann, Carr, Cibula & Frazier, John A. Spann and Laurence W. Carr for Respondents.

ADAMS, P. J.—Plaintiffs were the .owners of certain land in Shasta County across which a natural stream known as the east fork of Clear Creek ran in a southwesterly direction to its confluence with Clear Creek which ran along the west side of the property. The only access to the house occupied by the Kells upon the premises was by a road leading from a county road and crossing the east fork over a bridge which Mr. Kell had constructed. Plaintiffs also owned a water right appurtenant to their property, and water for the irrigation of some fifteen or twenty acres of their land was diverted from the said east fork at a point above the upper or northerly line of their property by means of a headgate, dam and ditch.

Defendants were engaged in gold dredging, and in the summer of 1939 they purchased some five acres of the Kells' land lying on the north side of the east fork, for the purpose of dredging same, after which it was reconveyed to plaintiffs. Operations were begun about August 15th, and continued for eight days, during which time the channel of said east fork was dredged from a point near its confluence with Clear Creek, to a point beyond the boundary of plaintiffs' land, and extending beyond the Kell diversion dam. In the course of these operations the original channel of the stream was changed, the old channel being filled up with tailings. Also the Kell dam and headgate and a part of their ditch were destroyed. The bridge was moved from its original position, the channel which it had formerly spanned was widened by the dredging operations, and the bridge was then set back across the new channel. When the fall and winter rains came the channel of the stream was unable to carry the waters with the result that the bridge was washed out and plaintiffs' ditch was further damaged.

Charging that the damages sustained by plaintiffs because of their loss of the bridge and diversion works were due to the negligence of defendants in the manner in which their dredging operations were carried on, and their negligent deposit of tailings on the banks and in the natural channel of the stream, plaintiffs began this action. Trial was had by the court sitting without a jury, and at its termination findings of fact and conclusions of law were filed, followed by judgment awarding plaintiffs $1,287 for damages to the bridge, $471 for the loss of their dam and headgate, $35 for a fill, and $234 for the destruction of 234 feet of their diversion ditch.

Defendants have appealed contending that the evidence is insufficient to show negligence on their part, that the damages suffered by plaintiffs were due, rather, to an act of God, to wit: an excessive flood that occurred about the first of March, 1940, and that damages were improperly assessed.

The trial court found that in the course of the dredging operations tailings were negligently deposited behind the dredger used therein in the natural channels of Clear creek and the east fork thereof, and that the dredging operations and the negligent deposit of tailings as aforesaid changed, altered, obstructed and destroyed the natural channels of the streams; that during the course of said dredging operations and as a proximate consequence of the negligent deposit of said tailings in the streams the dam and headgate of plaintiffs were entirely destroyed and rendered useless and as a further proximate consequence at least 234 feet of plaintiffs' ditch was entirely destroyed. As to the bridge it was found that it was removed from its original location and later negligently replaced by defendants, and that thereafter as a proximate consequence of the acts of defendants in altering, changing and obstructing the natural channel of the east fork said bridge was washed away and entirely destroyed, and the banks of the creek greatly widened. As to the claim of defendants that these damages were due to the unprecedented floods that came late in February or early in March, 1940, the court found that prior to said time there had been normal high water which had washed the tailing deposits into the channel and changed the course of the creek in such a manner as proximately to result in the said injuries; that prior to said flood the normal high waters had begun to wash away the tailing piles upon which the bridge was

negligently placed and that the washing away of said bridge was proximately contributed to by the high waters flowing down the east fork prior to said flood.

Appellants cannot contend seriously that there is a total absence of evidence to support the court's finding of negligence on their part; they do to some extent argue the weight of it, but such matters are for the trial court. It may be noted, however, that defendant Clark testified that they agreed with the Kells that they would not mine up their ditch or their dam, that after their operations the dam was useless unless they put in a few days to open it up, that they tore out the willows where the headgate was, though the willows would be a protection to the ditch in high water, that their caterpillar probably mashed down the banks of the ditch a little, that they mined both sides of the creek, that tailing piles were left, that they had agreed to leave the road and bridge in as good condition as it was formerly, that the stream at the bridge which was formerly twenty feet wide was sixty feet wide after the dredging, that tailings were left across certain portions of the east fork, that the level of the creek bed was raised and that when the bridge was replaced after they took it out it was set back on tailing piles. Mr. Kell testified that tailings were piled on both sides of the stream fifteen feet higher than the original water flow, that the bridge was replaced across an entirely new channel with no bulkheads, just on top of the tailing piles, that the channel was moved about forty feet from the south side to the north side of the creek, and that the water level was raised about four feet. Mrs. Kell testified that the old channel of the creek was closed with tailings and their ditch spread out over the flat, that the old channel was covered with tailings, that the dredger operated close enough to the ditch to tear some of it down and defendants made no effort to make a substantial ditch but built one of tailings that went down with the first high water, that the banks of the original ditch were solid, and as to the bridge that it was originally a good substantial one, that its original site was buried under tailings and that when it was replaced the sills were not put on bedrock and no bulkheads were built.

There was, therefore, ample evidence to sustain the trial court's findings of negligence.

In *Salstrom* v. *Orleans Bar Gold Mining Co.*, 153 Cal. 551, 555 [96 Pac. 292], it was said that no matter how carefully

a miner may conduct his mining operations, he has no lawful right to flood or wash away his neighbors' land, or deposit mining debris thereon to its injury, and that if by the deposit of such debris in the stream he causes such a result, he is liable for the resulting damage; and the fact that he uses all care for his neighbors' property, consistent with the successful conduct of his mining operations, is immaterial. (With citations.)

As to the contention of defendants that even though they were negligent the extraordinary floods of 1940 would have washed the bridge out anyway, as many other bridges in the vicinity were destroyed, and therefore the eventual destruction of the Kell bridge and other works must be attributed to that act of God, the rule of law in this state, as enunciated in *Chidester* v. *Consolidated Ditch Co.*, 59 Cal. 197, is that while no one is responsible for that which is merely the act of God, or inevitable accident, ''But when human agency is combined with it, and neglect occurs in the employment of such agency a liability for damage results from such neglect.'' Also see *Smith* v. *San Joaquin Light & Power Corp.*, 59 Cal. App. 647, 649 [211 Pac. 843] ; *Perkins* v. *Blauth,* 163 Cal. 782, 792 [127 Pac. 50].

In the instant case the trial court found that the injuries to plaintiffs' dam, headgate and ditch were proximately contributed to by the deposit of tailings in the creek prior to the flood conditions which defendants designate as the act of God; that prior to said flood there had been normal high water which had washed the tailing deposits into the channel and changed the course of the creek in such manner as proximately to result in said injuries; and as to the loss of the bridge, that prior to said flood conditions the normal high waters had begun to wash away the tailing piles upon which the bridge was negligently placed and the washing away of the bridge was proximately contributed to by the prior high water.

These findings are sustained by the evidence. Mr. Kell and Mr. Maupin both testified that several days prior to the big flood the water was washing the tailing piles on which the bridge had been placed; and defendant Clark admitted that prior to the flood he had been warned that the water was washing around the bridge and that he had certain repairs made in an effort to shear the water away from washing out the approaches. He also admitted that prior to the flood

the creek bed had filled up with tailings to a certain extent and that there had been an overflow into a swale, and that he sent men to put in a sack dam; also that he ran the bulldozer down the channel and pushed the tailings out on the sides of the creek; and the testimony shows that the normal high waters washed tailings down and covered up the dam, covered the headgate and filled the ditch. There was ample evidence, therefore, that the negligence of defendants in their operations combined with the unprecedented flood to complete the destruction of plaintiffs' diversion works, ditch and bridge.

Appellants further contend that damages were improperly assessed; that the measure thereof should have been the diminution in the fair market value of plaintiffs' property, but that the court measured the damages by the cost of replacement.

The rule laid down in *Green* v. *General Pet. Corp.*, 205 Cal. 328, 336 [270 Pac. 952, 60 A. L. R. 475], is that if the cost of repairing the injury and restoring the premises to their original condition amounts to less than the value of the property prior to the injury, such cost is the proper measure of damages; and if the cost of restoration will exceed such value then the value of the property is the proper measure. Citing *Salstrom* v. *Orleans etc. Mining Co., supra.*

Also see 36 Am. Jur., section 229, page 443, section 230, page 444, and *Erceg* v. *Fairbanks Exploration Co.*, 95 F. (2d) 850, 852. In 18 R. C. L., section 144, page 1249, it is said that where injuries are remediable the cost of repairs or restoration may properly be the measure of damages. The testimony for plaintiffs was that the value of their property before the injuries complained of was $3,700 to $4,000: the cost of restoration was found to be $2,027, therefore the latter was the proper measure of damages.

As to the amount of the damages it appears to have been within the evidence presented and we cannot say that it is excessive.

The judgment is affirmed.

Thompson, J., concurred.