[Civ. No. 7079.   Third Dist.   Dec. 18, 1944.]

HAROLD AVERY, Appellant, v. FREDERICKSEN AND WESTBROOK (a Copartnership) et al., Respondents.

T. L. Chamberlain and Gerald B. Wallace for Appellant.

Thelen, Marrin, Johnson & Bridges for Respondents.

ADAMS, P. J.—Appellant Avery, and respondents Fredericksen and Westbrook, a copartnership, entered into a contract which recited that the latter had entered into a contract with the United States War Department which required the use of material (granite sand) believed to be available on land owned by Avery; that "Owner grants to Contractor the right to enter upon the property and to remove, and the Contractor agrees to remove, therefrom such quantities of the material as Contractor may require in the performance of its said Contract"; that "Contractor agrees to pay to Owner, and Owner agrees to accept from Contractor, the sum of twenty-five dollars ($25.00) per acre for the acres used in the performance of its contract.  Payment of ($150.00) one hundred and fifty dollars for the site of six acres shall be payed [sic] upon the signing of this agreement"; that "Before removing the required material, Contractor agrees to strip one foot of top

soil from said property. After all of the required material has been removed, Contractor agrees to level off any portion of the property from which material is removed, and to replace the top soil, and to replace all fences which it may have removed." The land was described as a six-acre site situated on the southeast corner of the owner's property.

Respondents entered upon the land and removed 100,000 cubic yards of material from a three and one-half acre portion thereof, but did not level off such portion, nor replace the top soil. Appellant sued for damages in the sum of $10,400, alleged to be the reasonable cost of leveling off said three and one-half acres and replacing the top soil. The action was tried by the court sitting without a jury, and resulted in a judgment for appellant for $87.50 which the court found to be the value of the three and one-half acres, at $25 per acre. While the court found that the reasonable cost of leveling the area and replacing the top soil is $10,400, it held that damages in an amount greater than the total value of the land would be excessive and unreasonable.

The only question raised on this appeal is whether the court applied the correct measure of damages. It is agreed by the parties that the measure of damages is fixed by section 3300 of the Civil Code which reads: "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Section 3358 of the Civil Code provides: "Notwithstanding the provisions of this chapter, no person can recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance thereof on both sides, except in the cases specified in the articles on exemplary damages and penal damages, and in sections three thousand three hundred and nineteen, three thousand three hundred and thirty-nine, and three thousand three hundred and forty." And section 3359 of the Civil Code also provides: "Damages must, in all cases, be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages, contrary to substantial justice, no more than reasonable damages can be recovered."

In spite of these provisions and though, according to the evidence in the case, plaintiff's land, if restored to its origi-

nal condition, would have no greater value than the amount awarded as damages, appellant contends for the right to recover from defendants $10,400, as the cost of filling the pit left by defendants, the leveling of the three and one-half acres, and the replacement of the top soil thereon.

We agree with the finding of the trial court that an amount greater than the total value of the land would be excessive and unreasonable, and are of the opinion that the amount awarded fully compensates plaintiff for the detriment suffered by him by reason of the acts of defendants. It is said in 8 Ruling Case Law 434-435, that one who has been injured by the breach of a contract or the commission of a tort is entitled to a just and adequate compensation for such injury, *and no more;* that in no case should he be placed in a better position than he would be in had the wrong not been done or the contract not been broken. Also, at page 453, the same authority states that courts generally agree that the rule of compensation to an injured party controls the measure of damages both in actions ex contractu and ex delicto, and that many authorities hold that the liability for loss incident to and resulting from a breach of a contract is generally not so extensive as that for a loss resulting from the commission of a tort. Also, page 454, that the loss or injury actually sustained rather than the price paid or agreed to be paid on full performance, is the proper measure of damages, except where the contract provides by way of stipulated damages that the consideration shall be the amount recoverable.

We also find it stated in 15 American Jurisprudence 400, that the fundamental principle of the law of damages is that one injured by a breach of a contract or by a wrongful or negligent act or omission shall have fair and just compensation commensurate with the loss sustained in consequence of defendant's act which gives rise to the action; also, pages 402-404, that "The fundamental principle of the law of damages being compensation for the injury sustained, the plaintiff in a civil action for damages cannot, except in the cases in which punitive damages may be recovered, hold a defendant liable in damages for more than the actual loss which he has inflicted by his wrong. In other words, one injured by the breach of a contract or the commission of a tort is entitled to a just and adequate compensation for such injury, but no more. His recovery is, in the absence of circumstances giving rise to an allowance of punitive damages, limited to a fair compensation

and indemnity for the injury which he suffered. The law will not put him in a better position than he would be in had the wrong not been done or the contract not been broken.'' These same principles are stated in 8 California Jurisprudence 821, where it is said that the general rule as to the measure of damages for breach of contract is the actual loss sustained; that it is a fundamental rule of law that courts will not, except where exemplary damages are given, allow a party to a contract to recover more upon its breach than he would have received by its due performance. It is also said, at page 742, that the object of damages is to give compensation for the loss from the injury sustained, and that they should be exactly commensurate with the injury, neither more nor less; that, as stated in *Coburn* v. *California etc. Cement Co.,* 144 Cal. 81, 84 [77 P. 771], ''The law seeks to give the complaining party the value of his bargain—to prevent a loss which the fulfillment of the contract would have prevented—to put the injured party, so far as money can do it, in the same position as if the contract had been performed.''

In the early case of *De Costa* v. *Massachusetts etc. Min. Co.,* 17 Cal. 613, defendant dug a ditch on plaintiff's land. Plaintiff sued to have the ditch abated and filled up, and for damages. The court said, page 617:

''The plaintiff could not recover beyond the injury sustained, *and it was improper to award compensation for an expense which might never be incurred.* It is possible that the cost of filling up the ditch may far exceed any injury resulting from it in its present condition, and in that case it is not probable that the amount recovered would ever be used for that purpose. There are, undoubtedly, cases in which it is proper to allow prospective damages; but it is certain that the present case does not belong to that class. 'If the case be tort,' says Sedgwick, 'and the wrong done before suit brought, the plaintiff is not limited solely to the consequential damage which has actually occurred up to the trial of the cause, but he may go on to claim relief for the prospective damage, which can then be estimated as reasonably certain to occur.' (Sedg. on Dam. 109.) It is evident that relief of this character cannot be obtained, *unless it appear that the party will be subjected to the particular loss or injury for which he demands compensation.*'' (Italics added.)

In *Johnson* v. *Hinkel,* 29 Cal.App. 78 [154 P. 487], plaintiff leased land to defendant for oil drilling, the lease providing

that in the event the land proved nonproductive and was abandoned by the lessee, he would not remove the casings from any well. Defendant abandoned the land and removed the casings, whereupon plaintiff sued and recovered judgment for $22,500 found to be the cost of replacing the casings. The contract provided that the land could be purchased for $20,000, so the amount awarded exceeded its value. In reversing the judgment the court said that plaintiff was entitled to recover his pecuniary loss only, that if it could be proved that the land contained no oil, then the only damage suffered by plaintiff was the value of the casing; that

"It is a fundamental rule of law that courts will not, except where exemplary damages are given, allow a party to a contract, to recover upon its breach more than he would have received by its due performance. The Civil Code, in providing for the measure of damages in the case of a breach of contract, lays down the rule that a party is entitled to recover an amount which will compensate him for all the detriment proximately caused by the breach, or which in the ordinary course of events would be likely to result therefrom (Civ. Code, sec. 3300)."

In *Perkins* v. *Blauth*, 163 Cal. 782 [127 P. 50], defendants, with a dredger, cut through a levee along the Sacramento River with the result that plaintiff's lands were inundated from overflow of waters from the river, and injured. The difference in the market value of plaintiff's lands before and after the injury was held to be the proper measure of damages.

In *Green* v. *General Petroleum Corp.*, 205 Cal. 328 [270 P. 952, 60 A.L.R. 475], plaintiffs sued for damages to their land caused by the blowing out of defendant's oil well on adjoining land, which resulted in depositing debris on plaintiffs' land, destroying lawns, trees, etc. The measure of damages to the realty was held to be as follows (p. 336) :

"If the cost of repairing the injury by removing the debris deposited by the appellant, and otherwise restoring the premises to their original condition, amounts to less than the value of the property prior to the injury, such cost is the proper measure of damages; and if the cost of restoration will exceed such value, then the value of the property is the proper measure. (*Salstrom* v. *Orleans etc. Mining Co.*, 153 Cal. 551, 558 [96 P. 292].)"

*Mutch* v. *Long Beach Imp. Co.*, 47 Cal.App. 267 [190 P. 638], involved the measure of damages for the attachment of an automobile. The judgment was for $1,500.65, while the

undisputed evidence showed that the value of the car when taken was $400. The court, in reversing this judgment, said, pages 268, 269, that "It must be apparent at once that there is something wrong with a scale of damages that allows three times as much for the detention of an article from the possession of the owner for a period of two years as could have been recovered if the trespasser had completely smashed it up and destroyed it in the first instance"; that "it would be against conscience to permit a recovery so out of proportion to the value of the thing involved as appears here." (Citing Civ. Code, § 3359.)

In *Salstrom* v. *Orleans etc. Min. Co.*, 153 Cal. 551, 558 [96 P. 292], where plaintiff's property was covered by debris from defendant's mining operations, the court said that if the cost of removing the debris would amount to less than the value of the property as it was prior to the injury, such cost would be the proper measure of damages; but if the cost of repair would exceed such value, then *the value of the property* would be the proper measure.

In *Kell* v. *Jansen*, 53 Cal.App.2d 498 [127 P.2d 1033], a case of damage to plaintiff's land due to the negligence of defendants, this court said:

"The rule laid down in *Green* v. *General Pet. Corp.*, 205 Cal. 328, 336 [270 P. 952, 60 A.L.R. 475], is that if the cost of repairing the injury and restoring the premises to their original condition amounts to less than the value of the property prior to the injury, such cost is the proper measure of damages; and if the cost of restoration will exceed such value then the value of the property is the proper measure."

Here the undisputed evidence shows that the fair market value of plaintiff's land before the sand was taken therefrom was $20 per acre and that its value was not depreciated by reason of the excavation left after removal of the sand; and that the value of plaintiff's whole tract of 365 acres would not exceed $7,300. Plaintiff's own testimony showed that he had paid but $12.50 an acre for it six years before the trial, that he had put no improvements of any great value upon it thereafter, that he did not reside upon it and that it was used mainly for grazing. His testimony also shows that he told defendant's agent that he wanted $25 per acre for the land and that he "would charge for letting him go in there and get the material," $25 per acre. Payment of $150 for the use of six acres was due upon the signing of the agreement, and we assume was paid at that time. It therefore appears

that plaintiff has been paid the full market value of his land, and in addition thereto has been allowed $87.50 for the three and one-half acres from which the sand was taken.

Appellant agrees that the measure of damages which he is entitled to recover is the amount which will compensate him for all of the detriment proximately caused by defendants, but urges that he will not be fully compensated unless he is paid the amount it will cost to level the three and one-half acres, even though his land would be worth no more than $25 per acre if it were restored to its original condition. He argues that the value of the work and labor necessary to level the land and restore the top soil was a part of the price which he was to receive for the sand. He says in his brief:

"The moment said contract was executed, defendants became entitled to remove from plaintiff's land material which *to them* had a value of $25.00 per acre for the acres used in the performance of their contract with the Government, and a further value such that defendants, in order to get it, were willing to also agree 'to strip one foot of top soil from said property,' and after removing the material they required, 'to level off any portion of the property from which material' was removed and 'to replace the top soil.'" (Italics added.)

And he adds that the value of plaintiff's land was not involved. Apparently, then, he is urging that the value of the sand to defendants and not the detriment suffered by plaintiff himself should be the measure of damages to which he was entitled; but this is not the test laid down in the code sections above cited.

Appellant relies heavily upon *Sherman* v. *Gray*, 11 Cal. App. 348 [104 P. 1004]. In that case plaintiff owned land in San Francisco covering a city block. He entered into a contract with defendants under which defendants were to remove 7,000 cubic yards of surplus sand and pay therefor 6¼ cents per cubic yard. They were also to level and grade the block and streets to the official grade and cover the entire surface and one-half the streets fronting thereon with two inches of clay. Defendants removed 4,388 cubic yards more sand than the contract allowed, thereby reducing the level of the block below official grade, and did not grade or level the street or the land. The trial court found that in order to bring the lot to the official grade plaintiff would be obliged to put back this 4,388 cubic yards of earth, at a cost of $1,090.17, which amount was allowed as damages. The controversy on appeal was whether defendants should be compelled to pay an amount necessary to restore to the land the amount of sand taken in excess of

the amount provided for in the contract, or should pay only the amount provided in the contract to be paid as liquidated damages in case of default. There is nothing in the case to indicate that the amount allowed as damages exceeded the value of plaintiff's land, and since a city block was involved, obviously it did not. Also as the restoration of the excess sand taken was necessary in order to restore the land to the official grade, something which plaintiff would be compelled to do, it is fair to assume that its value had been depreciated to that extent by defendant's acts.

In the case before us the market value of plaintiff's land has not been depreciated, he has been allowed the full value thereof, and still has the land. It cannot be said, therefore, that he has suffered any detriment for which he is not compensated. He does not even suggest that he is under any compulsion to restore his land to its former condition, or that he would do so if allowed the $10,400 claimed. Common sense compels the conclusion that he would not spend such amount, or any of it, to level a piece of land the market value of which would not be enhanced thereby.

The judgment is affirmed.

Thompson, J., and Peek, J., concurred.

A petition for a rehearing was denied January 15, 1945, and appellant's petition for a hearing by the Supreme Court was denied February 15, 1945. Carter, J., and Schauer, J., voted for a hearing.