[Civ. No. 38589. First Dist., Div. Two. Feb. 28, 1977.]

CHARLES G. MOZZETTI et al., Plaintiffs and Respondents, v.
CITY OF BRISBANE et al., Defendants and Appellants.

**Counsel**

Robert F. Price and Robert E. Lee for Defendants and Appellants.

Bocci & Modena, Daniel J. Modena and Douglas E. Stephenson for Plaintiffs and Respondents.

**Opinion**

**KANE, J.**—Defendants City of Brisbane and Milton S. Hetzel appeal from the trial court's judgment entered on a jury verdict awarding respondents damages in the sum of $75,000.

Viewing the evidence in favor of the judgment, as we must, it appears that the controversy at hand arose from flood damage to respondents' property located in the City of Brisbane, California. The property consists of a 40-unit motel, a 27-unit trailer park, and a storage building, and is bounded on the east by Old County Road, on the north by Visitacion Mall, and on the south by San Francisco Avenue. Because heavy traffic had caused serious deterioration to Visitacion Mall and Old County Road, in the summer of 1971 the city decided to resurface the streets and to construct a sidewalk on the southeast side of Visitacion Mall adjacent to the motel.

The basic concept of the Visitacion Mall project (Project) was submitted to the city council for approval in August 1971. The engineering plan, prepared by City Engineer Hetzel was, however, no more than a "surface drawing," which failed to designate formal cross-sections, plans, specifications, elevations, grades or slopes. In fact, the elevations were made in the field by Marvin Wolff, a civil engineer, who had been hired by Hetzel and given general instructions to design the grade and to stake it out for construction. Wolff carried out his field surveying work in August 1971, and thereafter prepared an informal drawing containing the measurement data. The record is devoid of any showing that the informal drawing prepared by Wolff was ever submitted to the city for approval.

The record does indicate, however, that during the course of construction several changes were made that were neither designated nor contemplated in the original plan. Thus, during the progress of the construction, Visitacion Mall was widened from 40 to 50 feet. In deviation from the approved plan the raised barrier designed to prevent surface water from flowing into the motel was eliminated and instead a concrete valley gutter with inadequate catch basins and drains was installed. Also, at variance with the original plan which permitted a maximum of three-inch asphalt thickness, the sidewalk and curb elevations along both Visitacion Mall and Old County Road were considerably higher. In point of fact, engineer Wolff testified that as much as 14 inches were added to the height of Visitacion Mall at the edge of the street immediately adjacent to the motel.

The evidence also showed that the design of the Project was defective in several respects. Civil engineer James Hauke, who testified on respondents' behalf, maintained that in addition to the catch basins already installed at least three more catch drains should have been

placed along the south edge of Visitacion Mall to pick up and dispose of flood waters; that instead of installing rectangular catch basins in the middle of the north entrance, appellants should have constructed a trench drain with a steel grating on top across the entire width of the driveway, and the trench drain should have been tied into the storm sewer system across Old County Road rather than being hooked to the already inadequate drain at the south entrance; and that in conformance with the Uniform Building Code the sidewalk should have sloped toward the center of the road rather than toward respondents' premises. In Hauke's expert opinion, the construction of the elevated sidewalk leaning toward respondents' buildings had the effect of placing "a levy or a moat around or raised dike around the Mozzetti property; leaving the Mozzetti property physically in a hole."

The Mozzettis testified that they had experienced no flooding prior to the construction of the Project; that formerly surface waters had flowed through or around the premises; that after the construction of the Project the motel and the trailer park were left in a hole into which surface waters naturally drained; and that they had warned the city about the potential mischief many months prior to the occurrence of the flooding, but the city had failed to take any remedial steps. In addition, both respondents and other witnesses testified that the city maintained the storm sewers and drains around respondents' property in a poor condition, and that the clogging of the drains was at least partly responsible for the flooding in dispute.

In an effort to disclaim liability, appellants introduced evidence that in the early morning hours of October 11, 1972, the time of the incident, Brisbane experienced an unprecedented rainfall. Measurements on a rain gauge located 150 yards from the motel showed that 2.7 inches of rain fell in 4½ hours. The same morning, for the first time since its construction, the Bayshore Freeway was flooded at South San Francisco, and was closed to traffic. The precipitation of such magnitude was characterized by several defense witnesses as a 100-year storm.

It is uncontradicted that as a result of the flooding respondents' premises were inundated with water. Water got into the motel office building and the storage room (Eagles Hall). The maximum depth of the water was 18 inches. The water remained on the premises for several hours, leaving the floor covered with mud and silt.

Based upon the foregoing facts, respondents brought an action against appellant city and City Engineer Hetzel. The lawsuit was premised upon several legal theories, including negligent design, construction and maintenance of public property; maintenance of public property in a dangerous condition; injunction; and abatement of nuisance. In an unartful manner, respondents also purported to state a cause of action for inverse condemnation.

Appellants contend that the judgment entered should be reversed because the jury was erroneously instructed as to both the defense of design immunity of Government Code,[1] section 830.6, and the measure of damages. In addition, appellants claim that the trial court committed prejudicial error by refusing to take judicial notice of the fact that due to the heavy rainfall during the disputed period San Mateo County had been declared a disaster loan area.

*Instruction On Design Immunity*: Appellants requested an instruction on design immunity in the language of section 830.6. The trial court gave the proposed instruction with a modification as noted below.[2] Appellants claim that the submission of the issues of advance approval and reasonableness of the plan or design to the jury was prejudicially erroneous because those issues constitute legal questions to be determined by the court rather than the jury. Although appellants' contention that design immunity is a legal issue for the court is correct, their claim of error must be rejected in this case.

In the first place, it clearly appears that the error complained of by appellants was invited error which estops appellants from raising it on

[1] Unless otherwise indicated, all references will be made to the California Government Code.

[2] The instruction in dispute reads as follows: "You are instructed that at the time of the alleged damage to plaintiff's property Government Code Section 830.6 of the State of California read, in part, as follows: 'Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor.'

*"Be advised that no court or legislative body has made such a finding. That is for you the jury to decide."* (Modified portion is italicized.)

appeal (*Abbott* v. *Cavalli* (1931) 114 Cal.App. 379, 383 [300 P. 67]; *Sommer* v. *Martin* (1921) 55 Cal.App. 603, 610 [204 P. 33]; *Bondulich* v. *O. E. Anderson Co.* (1962) 210 Cal.App.2d 12, 17 [26 Cal.Rptr. 147]; 6 Witkin, Cal. Procedure (2d ed.) §§ 266, 276, pp. 4257, 4264-4265). ■ The usual methods for raising a design immunity defense are motion for summary judgment (*Baldwin* v. *State of California* (1972) 6 Cal.3d 424, 430-431 [99 Cal.Rptr. 145, 491 P.2d 1121]); motion for nonsuit (*Cameron* v. *State of California* (1972) 7 Cal.3d 318, 322 [102 Cal.Rptr. 305, 497 P.2d 777]); motion for directed verdict (*De La Rosa* v. *City of San Bernardino* (1971) 16 Cal.App.3d 739, 742 [94 Cal.Rptr. 175]); or a combination of these motions (*Davis* v. *Cordova Recreation & Park Dist.* (1972) 24 Cal.App.3d 789, 793 [101 Cal.Rptr. 358]). On submitting such motions, the trial court is invited, and is in a position, to rule whether the evidence is sufficient to support the design immunity defense (cf. *Johnston* v. *County of Yolo* (1969) 274 Cal.App.2d 46, 51-52 [79 Cal.Rptr. 33]). If the trial court determines that the defense has been established, the jury is instructed that the public entity is immune as a matter of law for design-related damages, but if the damage is unrelated to the design (e.g., it results from improper construction or improper maintenance), then the public entity may still be liable (*Johnston* v. *County of Yolo, supra,* p. 56; Van Alstyne, Cal. Government Tort Liability (Cont. Ed. Bar 1964) § 6.83, pp. 271-272).

■ In the instant case, the record discloses that appellants failed to follow any of the above described methods or to seek a court determination on the legal issues in any other way. Instead, appellants requested an instruction on design immunity in the language of the statute which, in effect, was tantamount to submitting the legal questions in dispute to the jury. It is, of course, well established that where affirmative action or conduct is required, mere silence must be taken as acquiescence (*Allin* v. *International etc. Stage Employes* (1952) 113 Cal.App.2d 135, 138-139 [247 P.2d 857]). It is equally axiomatic that the parties must abide by the consequences of their own acts, and cannot seek reversal upon appeal for errors which they have committed. Consequently, where, as here, the party by his own conduct induces the commission of some error by the trial court (i.e., "invites" the error), he is estopped from insisting that the action of the court is erroneous (*Collins* v. *Graves* (1936) 17 Cal.App.2d 288, 297 [61 P.2d 1198]).

■ In the second place, examination of the record is persuasive that appellants failed to produce sufficient evidence establishing the criteria

of design immunity, and, as a result, the instruction on design immunity should not have been given at all.

The cases consistently hold that the design immunity defense provided by section 830.6 rests upon the combination of three statutory elements: first, the *approval* of design *in advance* of construction by a legislative body or officer exercising discretionary authority; second, a court finding of substantial evidence of the *design's reasonableness*; and three, a *causal relationship* between the plan or design and the accident (*Davis* v. *Cordova Recreation & Park Dist., supra,* at p. 794; *De La Rosa* v. *City of San Bernardino, supra,* at p. 748; *Johnston* v. *County of Yolo, supra,* at pp. 51-52). It is well established that the defendant public entity has the burden of pleading and *proving* the defense of design immunity and each of the essential elements of it, and that an eventual failure to prove any of the enumerated ingredients is fatal to the applicability of that defense (*Hilts* v. *County of Solano* (1968) 265 Cal.App.2d 161 [71 Cal.Rptr. 275]; *De La Rosa* v. *City of San Bernardino, supra,* at p. 747).

When tested by the foregoing standards, an independent review of the record reveals that the evidence falls short of showing that the plan or design of the Project was approved in advance of construction by the city council or an authorized officer. Although there was testimony to the effect that the mall Project was approved by the city council, the evidence is uncontradicted that the one-page surface drawing so approved did not show the requisite details of the road design; that there were several changes during the construction which materially affected respondents' property; and that no satisfactory evidence was produced that such changes were approved by either the city council or a public employee possessing discretionary authority.

At the same time, the record casts grievous doubts on the reasonableness of the Project design as well. As noted earlier, engineer Hauke testified that the city failed to comply with reasonable rules and good engineering practices in designing the Project. Thus, it was shown that neither the number nor the location of the catch basins or drains was adequate; that the catch basins and drains should have been connected with the main sewer system rather than with the inadequate, clogged subsidiary drainage; that in order to dispose of storm waters a trench drain should have been constructed at the north entrance of the driveway; and that the sidewalk should have sloped toward the center of the street rather than toward respondents' premises. In addition, Mr.

Hauke expressed the view that the failure of the city to consider the existing topography in designing the Project was also violative of good engineering practices, as was the adherence to a 10-year storm design considered by the city.

Last, but not least, there is overwhelming evidence negating the requisite causal relationship between the design defect and the flooding in question. As pointed out earlier, the record is replete that the inundation of respondents' premises and the damages resulting therefrom were not attributable solely to the design defect of the Project, but were caused, at least partially, by the poor maintenance and clogging of the drainage system. ■ It is a longstanding proposition articulated in numerous cases that by force of its very terms design immunity is limited to a design-caused accident. Stated otherwise, it does not immunize against liability caused by negligence independent of design, even though independent negligence is only a concurring proximate cause of the accident (*Flournoy* v. *State of California* (1969) 275 Cal.App.2d 806, 811 [80 Cal.Rptr. 485]; *Johnston* v. *County of Yolo, De La Rosa* v. *City of San Bernardino, both supra*).

■ To summarize, we conclude that appellants may not claim that the design immunity instruction as given by the trial court prejudiced their cause because (1) the error was invited; (2) the evidence presented by appellants as a matter of law failed to support the defense of design immunity and as a consequence appellants were not entitled to instruction on that defense at all; and (3) respondents' theory of recovery which was based upon the doctrine of dangerous condition of public property was established by the evidence.[3]

*Instruction on Damages*: With regard to the measure of damages, the trial court combined and modified two instructions submitted by respondents and gave the following instruction to the jury: "You are hereby instructed that where property and buildings have been damaged by the wrongful action of another, the owner of said land, property and buildings is entitled to recover the *reasonable costs of* necessary *repairs and* recover damages for the *loss of rentals* during said time *and the*

---

[3]In light of the foregoing conclusion, it is unnecessary to decide whether appellants' claim should be rejected for the supplementary reason that the evidence presented at trial established appellants' liability for inverse condemnation also (Cal. Const., art. I, § 14). Under case interpretation, this latter provision has an overriding effect on the statutory immunity granted by section 830.6 (*Baldwin* v. *State of California, supra,* 6 Cal.3d at p. 438; Van Alstyne, Cal. Government Tort Liability, *supra,* p. 556).

*difference between the market value of said property immediately before the damage and after the damage, after making any necessary repairs."* (Italics added.) ■ Appellants claim that this instruction was prejudicially erroneous because it permitted a double recovery on the part of respondents. Appellants' position is well taken.

■ *The primary object of an award of damages* in a civil action, and the fundamental principle on which it is based, are *just compensation* or indemnity for the loss or injury sustained by the complainant, *and no more (Estate of de Laveaga* (1958) 50 Cal.2d 480, 488 [326 P.2d 129]; *Avery* v. *Fredericksen and Westbrook* (1944) 67 Cal.App.2d 334, 336 [154 P.2d 41]). ■ While there is no fixed, inflexible rule for determining the measure of damages for injury to, or destruction of, property, and whatever formula is most appropriate in the particular case will be adopted (e.g., the difference in the value of real property immediately before and after the injury; cost of making repairs, loss of use of the property; loss of profits and prospective profits; increased operating expenses pending repairs; present and prospective damages that are the natural, necessary or reasonable incident of the taking of property; cost of minimizing future damages (*Frustuck* v. *City of Fairfax* (1963) 212 Cal.App.2d 345, 367 [28 Cal.Rptr. 357]; *Barnes* v. *Berendes* (1903) 139 Cal. 32 [69 P. 491, 72 P. 406])), *in a case involving damage to plaintiff's property due to defendant's negligence,* the general rule is that *if the cost of repairing the injury and restoring the premises to their original condition amounts to less than the diminution in value of the property, such cost is the proper measure of damages; and if the cost of restoration will exceed such diminution in value, then the diminution in value of the property is the proper measure (Green* v. *General Petroleum Corp.* (1928) 205 Cal. 328, 336 [270 P. 952, 60 A.L.R. 475]; *Charles* v. *Reuck* (1960) 179 Cal.App.2d 145, 147 [3 Cal.Rptr. 490]; *Basin Oil Co.* v. *Baash-Ross Tool Co.* (1954) 125 Cal.App.2d 578, 606 [271 P.2d 122]; *Kell* v. *Jansen* (1942) 53 Cal.App.2d 498, 503 [127 P.2d 1033]).

■ In the instant case evidence was introduced indicating that the initial repair costs and damage items stemming from the flooding amounted to about $15,000. Additionally, it was shown that the remedial steps to prevent future flooding of the premises (construction of a retaining wall and drains; installation of two electric pumps and engineering expenses) carried a cost of about $44,700. Finally, respondents produced proof that there was a diminution in value of the property of at least $50,000, due to the fact that the area would have to

be filled in and elevated by a potential buyer in order to comply with the city's current decision requiring a certain elevation of the low-lying areas before the issuance of any future construction permit.

While it was alleged in the complaint that respondents suffered general damages due to emotional distress and disturbance as well, and there was testimony to the effect that as a result of the previous flooding, respondents became nervous and anxious every time it rained, it is quite evident that in light of the instruction given, the jury might well have considered both the cost of repair and the diminution value of the property at arriving at the $75,000 general verdict. The computation of damages in this fashion was clearly improper for three major reasons: One, in violation of the rules set out above, it allowed recovery cumulatively for both the cost of repair *and* the diminution in value of the property. Two, at the time of trial the filling requirement referred to by respondents as a basis for the decreased value of the property was only in the stage of recommendation and consideration on the part of the city, and had not yet materialized into a city ordinance. It is black-letter law that damages which are speculative, remote, imaginary, contingent or merely possible cannot serve as a legal basis for recovery (*City of Menlo Park* v. *Artino* (1957) 151 Cal.App.2d 261, 270 [311 P.2d 135]; *Frustuck* v. *City of Fairfax, supra,* at pp. 367-368). ■ Three, even if assumed arguendo that a valid city ordinance had been adopted, respondents are not entitled to recovery for any damages resulting from an ordinance of general application. It is an elementary proposition of law that damages stemming from a legitimate exercise of the police power are noncompensable provided the proper limits of that power have not been exceeded (*Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 262 [42 Cal.Rptr. 89, 398 P.2d 129]; *Sheffet* v. *County of Los Angeles* (1970) 3 Cal.App.3d 720, 732 [84 Cal.Rptr. 11]). Respondents here have failed to demonstrate that appellant city would be exceeding its legitimate power by enacting the ordinance. ■ All this leads to the conclusion that in the instant case the giving of an improper instruction on the measure of damages was likely to mislead the jury, and as a consequence the error must be held prejudicial (*Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663, 670 [117 Cal.Rptr. 1, 527 P.2d 353]; 4 Witkin, Cal. Procedure (2d ed.) § 242, p. 3056).

■ *Judicial Notice*: Appellants finally argue that the trial court committed reversible error by refusing to take judicial notice of the proclamation published in 37 Rederal Register, Number 218,

by which the United States Small Business Administration declared San Mateo County a disaster loan area. Appellants insist that the proclamation at issue was subject to mandatory judicial notice pursuant to Evidence Code, section 451.[4] We disagree.

It is well recognized that the purpose of judicial notice is to expedite the production and introduction of otherwise admissible evidence. While Evidence Code, section 451, provides in mandatory terms that certain matters designated therein must be judicially noticed, the provisions contained therein are subject to the qualification that the matter to be judicially noticed must be relevant (Evid. Code, §§ 350, 450).[5] The provisions relative to judicial notice are likewise qualified by Evidence Code, section 352, which permits the exclusion of any otherwise relevant evidence in the discretion of the trial court "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

In refusing to take judicial notice of the proclamation, the trial court took the position that the proclamation was not sufficiently relevant because it simply designated San Mateo County as a disaster loan area but did not have any specific reference to Brisbane. Even more importantly, the trial court also held that the exclusion of the proclamation was predicated on section 352 of the Evidence Code. It is well recognized that the trial court is vested with wide discretion to exclude evidence under section 352, and its ruling will not be disturbed on appeal unless there is a showing that the alleged abuse of discretion constituted a miscarriage of justice (*Cain* v. *State Farm Mut. Auto. Ins. Co.* (1975) 47 Cal.App.3d 783, 798 [121 Cal.Rptr. 200]).

The record at hand reveals that appellants were not prevented from proving that at the time of the incident there was heavy rainfall in the

[4]Evidence Code, section 451 provides in part that "Judicial notice shall be taken of: . . . (b) Any matter made a subject of judicial notice by Section 11383, 11384, or 18576 of the Government Code or by Section 307 of Title 44 of the United States Code."

California Evidence Benchbook, section 47.2, states in part: "RULE. Even though no party requests the court to do so, the court must take judicial notice of the following matters: . . .

"(f) Contents of regulations, proclamations and other documents adopted or issued by federal agencies and officials and published in the Federal Register. Evid. C. 451 (b); 44 USC 1507." (P. 834.)

[5]Evidence Code, section 350, provides that "No evidence is admissible except relevant evidence."

area concerned. As noted earlier, several witnesses were called and testified to the effect that the storm which occurred on October 11, 1972, was of extraordinary magnitude "in the order of a 100-year storm." In light of this record it cannot be said that the trial court abused its discretion to the prejudice of appellants and/or that the jury was misled with respect to the severity of the rainstorm which visited the area.

The judgment insofar as it determines the liability of appellants is affirmed; that portion of the judgment awarding damages to respondents in the sum of $75,000 is reversed. The matter is remanded to the trial court for retrial on the issue of damages alone. Appellants to recover costs.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied March 30, 1977.