Opinion
HOLLENHORST, Acting P.J.
In this personal injury action, the trial court upheld the state’s claim of design immunity and granted the state’s motion for summary judgment. Plaintiff, Dole Citrus, a California corporation, appeals, contending that, as a matter of law, the state lost the design *489 immunity protection of Government Code section 830.6 due to changed circumstances. We agree with the trial court that Dole Citrus presented insufficient evidence of changed circumstances. We therefore affirm.
Undisputed Facts
On November 22, 1993, Frank Limón, a Dole Citrus employee, was driving on interstate 10 towards the Cherry Avenue overcrossing when a person lit himself on fire and jumped off the Cherry Avenue overcrossing. The burning body crashed through the windshield of Mr. Limón’s car, severely injuring him. Dole alleged that it paid over $200,000 in workers’ compensation benefits on behalf of Mr. Limón.
Dole sought to recover the amount of those benefits from the state by contending that the Cherry Avenue overpass was a defective and dangerous condition because “the guardrail along the side of the overpass was inadequate in height to prevent objects from being thrown onto or falling onto the freeway below.” At the time of the accident, the Cherry Avenue over-crossing had a pedestrian walkway on its east side and a three-foot-high railing measured from the top of the sidewalk.
The state denied the existence of any dangerous condition and asserted design immunity under Government Code section 830.6 as an affirmative defense.
On November 2, 1995, the state filed its motion for summary judgment, again relying on the design immunity defense. As noted above, the trial court granted the motion.
Standard of Review
“A trial court may grant summary judgment only where there is no triable issue of material fact and the documents presented by the moving party are sufficient to sustain a judgment in its favor. Where, as here, the moving party is the defendant, it must either negate an essential element of the plaintiff’s case or state a complete defense. [Citations.]” (Spann v. Irwin Memorial Blood Centers (1995) 34 Cal.App.4th 644, 649 [40 Cal.Rptr.2d 360].)
The State’s Motion for Summary Judgment
The state’s motion for summary judgment was based on the contentions that the Cherry Avenue overcrossing was not in a dangerous condition at the *490 time of the accident, the state had no notice of a dangerous condition, and, even if there was a dangerous condition, the design immunity of Government Code section 830.6 applied.
In support of its design immunity contention, the state cited Muffett v. Royster (1983) 147 Cal.App.3d 289, 306 [195 Cal.Rptr. 73]: “In order for the state to establish design immunity as a defense, the state must show (1) A causal relationship between the plan and the accident; (2) discretionary approval of the plan prior to construction; (3) substantial evidence supporting the reasonableness of the design.”
The state presented evidence on each of these elements. A declaration of a retired employee of the State Department of Transportation established that the Cherry Avenue overcrossing was built in 1960, based on design plans approved in 1958.
The state conceded that changes in conditions since completion of the overcrossing could have made the highway dangerous. It cited Baldwin v. State of California (1972) 6 Cal.3d 424 [99 Cal.Rptr. 145, 491 P.2d 1121] in which our Supreme Court held that the immunity conferred by Government Code section 830.6 was not perpetual, but persists only so long as conditions have not changed: “Once the entity has notice that the plan or design, under changed physical conditions, has produced a dangerous condition of public property, it must act reasonably to correct or alleviate the hazard.” (Baldwin, supra, 6 Cal.3d at p. 434, fn. omitted.) Accordingly, to defeat a claim of design immunity, there must be objective evidence arising out of the actual operation of the plan that reveals the dangerous nature of the public improvement under changed physical conditions. (Id., at p. 435.) Our Supreme Court summarized its holding as follows: “[W]here a plan or design of a construction of, or improvement to, public property, although shown to have been reasonably approved in advance or prepared in conformity with standards previously so approved, as being safe, nevertheless in actual operation under changed physical conditions produces a dangerous condition of public property and causes injury, the public entity does not retain the statutory immunity from liability conferred on it by section 830.6.” (Baldwin, supra, at p. 438, fn. omitted. See generally, Cal. Government Tort Liability Practice (Cont.Ed.Bar 3d ed. 1992) § 3.57, pp. 375-376.) In summary, it is clear that the state presented sufficient evidence to establish the initial applicability of its design immunity defense, and Dole Citrus does not now contend otherwise. (Cameron v. State of California (1972) 7 Cal.3d 318, 325 [102 Cal.Rptr. 305, 497 P.2d 777].)
In opposition to the state’s motion, Dole Citrus disputed each of the points made by the state, except the undisputed fact that the Cherry Avenue *491 overcrossing was built in accordance with then existing highway standards. With regard to the design immunity issue, Dole Citrus argued that the state’s own documents showed “recognition of the danger inherent in the construction of overcrossings with pedestrian walkways and adjacent, short railings.”
The cited state documents included (1) a 1971 memorandum discussing a new program for installing protective fencing on overcrossings; (2) a 1972 project for installing chain-link railing for screening on several other interstate 10 overcrossings; (3) a 1972 policy calling for the installation of protective screening on all new overcrossing construction in urban areas; and (4) a 1990 project report which proposed installation of traffic signals, safety lighting, and ramp widening at the Cherry Avenue overcrossing.
In addition, in 1971, Streets and Highways Code section 92.6 was adopted. As subsequently amended, it now provides: “At such locations as shall be determined by the department to be appropriate, screening shall be installed and maintained on state freeway overpasses on which pedestrians are allowed, in order to prevent objects from being dropped or thrown upon vehicles passing underneath. First consideration shall be given to freeway overpasses in urban areas.”
Dole Citrus argued to the trial court, and argues on this appeal, that design immunity is not available as a defense because the state’s documents show that the state has been considering the installation of protective screening on highway overpasses since 1969. Dole Citrus thus contends that the state had notice of conditions requiring the installation of screens on overcrossings, and that it did not rectify the condition by installing screens on the Cherry Avenue overcrossing, and it also failed to warn the public of the danger from unscreened overcrossings.
Dole Citrus also cites as evidence of changed conditions a portion of the 1990 study for installation of traffic signals at the Cherry Avenue overcrossing. The study cites a significant increase in traffic volume from 1987-1989, a gradual growth in traffic volume, and a number of accidents at the offramps. Dole Citrus cites deposition testimony that the installation of the traffic signals would be considered a new project on the overcrossing which would require the installation of protective screening on the overcrossing. Thus, protective screening was installed in 1993 because of the other modifications being made to the overcrossing, not because of any demonstrated need for it.[1]
The statewide design manuals, which Dole Citrus also relies on, state: “To prevent objects from being dropped or thrown upon vehicles, protective *492 screening in the form of fence-type railings should be installed along new overcrossing structure sidewalks in urban areas. (Sec. 92.6 California Streets and Highways Code). . . . Screening should be installed at such other locations determined to be appropriate.”[2]
The basic contention of Dole Citrus is that the 1971 statute and subsequent Department of Transportation attempts to comply with it constitute both a recognition that unscreened overcrossings are a dangerous condition, and a conclusion by the state that circumstances have changed, such that the original design immunity ended. Dole Citrus also relies on a declaration by its civil engineer that recapitulates the documents listed above and concludes that “the conditions surrounding the area of the incident have significantly changed since the overcrossing was originally designed in 1958 and constructed in 1960.” However, data such as increased population in the general area, together with increased traffic volumes and an increased number of accidents, only shows that the area is becoming more urbanized. It does not show a significant physical change at the Cherry Avenue overcrossing.
Upon reviewing the material cited by Dole Citrus, we agree with the state that Dole Citrus has not cited evidence to establish a triable issue of fact as to changed conditions. The material provided only establishes a general concern with deaths and injuries resulting from objects thrown or dropped from freeway overpasses. The statute itself resulted from these concerns, and much of the submitted material relates to the department’s efforts to comply with the statute. However, the statute itself does not require installation of protective screening on all overcrossings, but only those locations in urban areas which the department deems appropriate for such installation. Necessarily, the statute does not require installation of protective screening at other locations. (Sts. & Hy. Code, § 92.6.)
The department’s design manual recognizes this fact by providing for four different bridge railing alternatives and by specifically providing that “[screening should be installed at such other locations determined to be appropriate.” Even if we treat the provisions of the design manual as mandatory, it requires installation of screening on older overcrossings only when the department determines that such installation is appropriate. This provision constitutes a department determination that retrofitting of protective screening is not required on all overcrossings.
In other words, the statute and the design manual do not require installation of protective screening on every freeway overpass in the state. Instead, *493 they require the department to install protective screening on new construction, and at other locations as deemed appropriate. Thus, a department engineer testified that screening would be installed on new or modified overcrossings, or if there was a significant accident history at a particular location.
Here, there was no evidence of a changed physical condition of the overcrossing which would make the earlier design obsolete. Dole Citrus also failed to show any significant accident history at the Cherry Avenue over-crossing resulting from dropped or thrown objects. Only one such incident had been reported in the two years preceding this accident.
Dole Citrus cites the appropriate authority: “Design immunity under section 830.6 is not perpetual but may be lost as a result of changed circumstances which subsequently render the improvement dangerous, if the public entity has received actual or constructive notice thereof. [Citation.] If the approved design becomes dangerous by reason of any change in conditions, and that fact is known to the public entity, the immunity will continue for only a reasonable period of time to allow the entity to obtain funds to carry out the remedial work of bringing the property back into conformity with a reasonable design or plan. (§ 830.6.) Thus, there are at least two predicates to loss of design immunity: changed conditions and notice. [Citation.]” (Compton v. City of Santee (1993) 12 Cal.App.4th 591, 598 [15 Cal.Rptr.2d 660].)
As noted above, we find that Dole Citrus failed to produce evidence that raises a triable issue as to whether there had been a change in physical conditions. “Our review of the history of the 1979 amendment [to Government Code section 830.6] leads us to conclude that a change in physical conditions is necessary to defeat design immunity.” (Grenier v. City of Irwindale (1997) 57 Cal.App.4th 931, 945 [67 Cal.Rptr.2d 454].)
In particular, we do not agree with the concept that changes in the state’s design manual, which regularly seek to improve design standards for new construction, support the conclusion or somehow constitute an admission that the superseded design standards were defective. It is just as likely that the previous designs were quite adequate for their intended purpose and that the new standards only represent an attempt to improve the design. After all, an old mousetrap may still work effectively even after someone invents a better one. In Thomson v. City of Glendale (1976) 61 Cal.App.3d 378 [132 Cal.Rptr. 52], plaintiff argued that a change in the Uniform Building Code showed the existence of a dangerous condition. The court stated: “The fact that the 1973 Uniform Building Code was changed and that the construction *494 in question did not conform to the new standards, does not establish the existence of a dangerous condition. It was not error for the trial court to deny the admission of the 1973 code into evidence.” (Thomson, supra, at p. 387.) Thus the change in the department’s design manual does not show that the earlier design created a dangerous condition.
The fact, if it is a fact, that the railing, in its original design, could have been made safer by increasing its height or installing protective screening is irrelevant. “It has likewise been held that liability is not to be fastened upon a municipality merely because it may appear that certain property, in nowise dangerous either in its construction or intended use, could possibly be made safer by other means.” (Belcher v. City and County of S. F. (1945) 69 Cal.App.2d 457, 463 [158 P.2d 996].)
The design manual changes here do not state or imply that the previous design is defective. Instead, the new standards only provide alternative railing standards for new construction. They also provide that “[s]creening should be installed at such other locations determined to be appropriate.” In addition, the design manual specifically provides that prior railing configurations may continue to be used to match existing conditions.
As discussed above, evidence of changed conditions must be evidence that physical conditions at a specific location have changed in such a manner that the original design has created a dangerous condition of which the entity has notice. (Baldwin v. State of California, supra, 6 Cal.3d 424, 431, 434; Grenier v. City of Irwindale, supra, 57 Cal.App.4th 931, 945.) As Baldwin holds, “Once the entity has notice that the plan or design, under changed physical conditions, has produced a dangerous condition of public property, it must act reasonably to correct or alleviate the hazard.” (Baldwin, supra, at p. 434, fn. omitted.) In this case, there was no evidence which would create a triable factual issue as to whether physical conditions at the Cherry Avenue overcrossing changed from the time the original railing was installed in 1960 to the time of the accident.
While concededly the state recognized the need for protective screening of new overcrossings, it is equally true to say that neither the Legislature nor the Department of Transportation mandated retrofitting of all freeway overcrossings in an attempt to prevent anyone from throwing objects or jumping from them. Instead, the statute and the submitted documents quite clearly state that the department had discretion as to which particular overcrossings to fence, and it properly exercised its discretion by first installing protective fencing at new overcrossings and those older overcrossings that had a history of accidents resulting from thrown or dropped objects. *495 Except for one minor incident, the Cherry Avenue overcrossing had no such history.
We therefore agree with the trial court that Dole Citrus failed to establish a triable issue of fact as to changed conditions that would defeat the immunity conferred by the original design, and that summary judgment was properly granted in favor of the state on the design immunity affirmative defense.
Disposition
The judgment is affirmed.
Ward, J., concurred.

 The protective screening was installed in conjunction with the signal installation project. Unfortunately, it was not installed until after the accident occurred.

 Dole Citrus asserts that the 1980 version of the design manual stated the policy that protective screening shall be installed along new overcrossings in urban areas. Since the wording only refers to new construction, the differences are not material for our present purpose.