95 Cal.Rptr.2d 733 (2000)
80 Cal.App.4th 1239
Stacy CORNETTE et al., Plaintiffs and Appellants,
v.
DEPARTMENT OF TRANSPORTATION, Defendant and Respondent.
No. B125741.
Court of Appeal, Second District, Division Three.
May 3, 2000.
As Modified on Denial of Rehearing June 1, 2000.
Review Granted July 19, 2000.
*734 Grassini & Wrinkle and Roland Wrinkle, for Plaintiffs and Appellants.
William M. McMillan; David R. Simmes; Larry R. Danielson; and Jill Siciliano for Defendant and Respondent.
*735 CROSKEY, Acting P.J.
In this case, we are presented with the question of whether a plaintiff in a personal injury action against a public entity who seeks to defeat the defense of design immunity (Gov.Code, § 830.6)[1] is entitled to a jury trial as to the existence of "changed conditions" which would lead to the loss of that immunity. Despite conceding that factual issues remained as to the question of changed conditions, the trial court denied plaintiffs a jury trial and resolved those issues itself.
Plaintiffs Stacy Cornette and Rodney Cornette appeal the judgment entered in favor of the defendant Department of Transportation ("Caltrans") following the conclusion of a trial limited to the bifurcated design immunity defense asserted by Caltrans. They argue they were improperly deprived of their constitutional right to a jury trial of the disputed issues pertaining to the existence of "changed conditions" which would have justified a denial of that defense. We agree with the plaintiffs and we will therefore reverse the judgment and remand the matter for a new trial.

FACTUAL AND PROCEDURAL BACKGROUND[2]
On May 23, 1992, the plaintiffs were involved in an automobile accident while driving northbound on the Antelope Valley Freeway. When another northbound vehicle blew a tire and collided with them, the plaintiffs were forced across the open dirt median of the freeway and into the southbound lanes where they collided with a southbound vehicle. The accident occurred just north of the Mountain Springs Road overcrossing; it was at a point which was approximately 20 feet beyond the end of an existing median barrier which Caltrans had previously constructed from the south up to, but ending at, the Mountain Springs Road overcrossing.
On May 18, 1993, plaintiffs filed this action for damages arising from their very substantial personal injuries and claimed mutual loss of consortium. They named a number of defendants in addition to Caltrans; however, we are concerned only with their claim against Caltrans which was based on the alleged dangerous condition of the Antelope Valley Freeway created by the absence of a median barrier at the location of the accident. At the time they filed their complaint, the plaintiffs requested a jury trial. Caltrans filed its answer on July 21, 1995, and raised, inter alia, the defense of design immunity. The plaintiffs in filing their Status Conference Questionnaire on September 11, 1997, again requested a jury trial; and the trial court, in its minute order of May 7, 1998, set the case for a jury trial.
The matter was called for trial on May 14, 1998 and Caltrans requested that the court bifurcate the design immunity defense and try it first. (Code Civ. Proc., § 597.)[3] The trial court granted this request but concluded that none of the issues relating either to the existence of design immunity or its loss should be submitted to the jury; rather, such issues should be tried solely by the court as the trier of fact. This was done over the objections of the plaintiffs who repeatedly argued that all issues, save one, relating to design immunity or its loss by reason of changed conditions, should be tried to the jury. The court rejected this contention and concluded *736 that it would be the arbiter of all factual and legal issues.
The parties then presented evidence, including expert witness testimony. On May 26, 1998, the trial court issued its Intended Decision, finding in favor of Caltrans. Thereafter, a formal Statement of Decision was signed and filed on June 26, 1998. In that statement, the trial court recognized that plaintiffs claimed that Caltrans' failure to install a median barrier had created a dangerous condition and amounted to actionable negligence but that Caltrans' claim of design immunity would, if sustained, preclude liability. The court noted that plaintiffs had argued the design immunity defense was not available to Caltrans because of the existence of changed conditions. It was the trial courts' resolution of the factual issues raised by that contention which presents the critical issue in this case.[4]
There is no doubt whatever that the evidence presented by the parties during the bifurcated hearing on Caltrans' design immunity defense, including particularly the competing expert testimony, was in conflict. There was substantial evidence presented that since this freeway had been designed and constructed in 1964 there had been a significant increase in both traffic volume and the number of accidents. Beginning in 1989 (three years prior to plaintiffs' accident) correspondence was generated describing other accidents *737 which had occurred in the vicinity of the freeway and Mountain Springs Road and expressing a sense of urgency to have installed a median barrier north of that intersection.
As the trial court expressly noted in its Statement of Decision, the substance of these communications and what action should have been taken in response to them was the subject of considerable testimony by the expert presented by Caltrans as well as by plaintiffs' expert. The conflict in this testimony involved not only the accuracy of the information which was being communicated, but also whether the interpretation of the information did or did not meet Caltrans' standard criteria to establish a cause for alarm. Further, even assuming there was a cause for alarm, there was additional conflict over whether there was an adequate or reasonable amount of time for Caltrans to complete installation of an appropriate median barrier prior to the May 23, 1992 date of plaintiffs' tragic accident.[5]
While there is no dispute that these are unresolved factual issues, and that they are properly raised and resolved through the presentation and evaluation of expert testimony, the trial court nonetheless accepted the argument of Caltrans that plaintiffs were not entitled to have these issues submitted to a jury and that they could properly be decided by the court.
The trial court proceeded to do just that and found in favor of Caltrans on its design immunity defense. It concluded that plaintiffs' expert was not credible and rejected his opinions relating to plaintiffs' "changed conditions" contention. Following issuance of the Statement of Decision on June 26, 1998, the trial court entered judgment on July 14, 1998. Plaintiffs thereafter prosecuted this timely appeal.

ISSUE PRESENTED
There is only one issue which we must resolve. It is whether plaintiffs are entitled to a jury trial on disputed factual issues pertaining to their claim that Caltrans' design immunity defense was lost by reason of changed conditions.

DISCUSSION

1. A Public Entity May Rely Upon Design Immunity As Defense To a Claim of Liability For a Dangerous Condition

Public entity can be liable for injury caused by a dangerous condition of its property. (Gov.Code, § 835.)[6] The state's failure to erect median barriers to prevent cross-median accidents may result in such liability. (Ducey v. Argo Sales Co. (1979) 25 Cal.3d 707, 720, 159 Cal.Rptr. 835, 602 P.2d 755; Morris v. State of California (1979) 89 Cal.App.3d 962, 965, 153 Cal.Rptr. 117.)
However, statutory law provides a "design immunity" defense to such liability. *738 (§ 830.6.)[7] Under section 830.6 there is no liability for an injury caused by the plan or design of a construction of or improvement to public property where such plan or design has been approved in advance of the construction or improvement by the legislative or other authorized body of the public entity provided the trial or appellate court determines that there is any substantial evidence that a reasonable legislative (or other authorized) body or public employee could have adopted or approved the plan or the design or standards therefor. Thus, a public entity raising a design immunity defense must establish three elements: (1) a causal relationship between the plan or design and the accident, (2) discretionary approval of the plan or design prior to construction and (3) the existence of substantial evidence supporting the reasonableness of the adoption of the plan or design. (Higgins v. State of California (1997) 54 Cal.App.4th 177, 185, 62 Cal.Rptr.2d 459.)
The rationale for design immunity is to prevent a jury from second-guessing the decision of a public entity regarding a particular plan or design of a public construction or improvement. (Baldwin v. State of California (1972) 6 Cal.3d 424, 432, fn. 7, 434, 99 Cal.Rptr. 145, 491 P.2d 1121; hereafter, Baldwin.) "`"[T]o permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested."' [Citations.]" (Cameron v. State of California (1972) 7 Cal.3d 318, 326, 102 Cal.Rptr. 305, 497 P.2d 777.) Or to put it another way, "in enacting section 830.6, the Legislature was concerned lest juries be allowed to second-guess the discretionary determinations of public officials by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan." (Baldwin, supra, 6 Cal.3d at p. 434, 99 Cal.Rptr. 145, 491 P.2d 1121.)

*739 2. A Public Entity's Design Immunity Defense May Be Lost By Proof of Changed Conditions

The Supreme Court in Baldwin, overruling its own prior precedent, held that the design immunity provided by section 830.6 was not perpetual, but was subject to loss under certain circumstances. In that case, involving an automobile accident caused by the absence of a left-turn lane in a 25 year-old intersection design where traffic had substantially increased, the court held that the statutory immunity could be lost where the public entity has actual or constructive notice that the plan or design has, under changed physical conditions, produced a dangerous condition of public property and the entity fails to act reasonably to correct or alleviate the hazard. (Baldwin, supra, 6 Cal.3d at p. 434, 99 Cal.Rptr. 145, 491 P.2d 1121.)
This result was justified, the court said, because the rationale for the grant of a design immunity had no relevance or application where actual post design experience has demonstrated the dangerous nature of the design. "[W]here experience has revealed the dangerous nature of the public improvement under changed physical conditions, the trier of fact will not simply be reweighing the same technical data and policy criteria which went into the original plan or design. Rather, there will then be objective evidence arising out of the actual operation of the planmatters which, of necessity, could not have been contemplated by the government agency or employee who approved the design. No threat of undue interference with discretionary decision-making exists in this situation." (Baldwin, supra, 6 Cal.3d at p. 435, 99 Cal.Rptr. 145, 491 P.2d 1121.)
In 1979, the Legislature reacted to the Baldwin decision by amending section 830.6. That amendment added the second and third sentences to the section (see fn. 7, ante). It provides that notwithstanding notice to a public entity that improved public property no longer conforms with the approved design or no longer conforms to a standard that reasonably could be approved by the public entity, (1) design immunity continues for a reasonable period of time sufficient to allow the public entity to obtain funds for and complete remedial work, and (2) if the public entity is unable to remedy the condition due to practical impossibility or lack of funds, design immunity continues as long as the public entity reasonably attempts to warn the public of the danger. (Stats.1979, ch. 481, § 1, p. 1638.) Thus, section 830.6, as so amended, specifies circumstances in which a public entity retains design immunity, but it does not specify the circumstances in which a public entity loses such immunity. (See Alvarez v. State of California (1999) 79 Cal.App.4th 720, 736, 95 Cal.Rptr.2d 719; Grenier v. City of Irwindale (1997) 57 Cal.App.4th 931, 944, 67 Cal.Rptr.2d 454.)[8] For that we necessarily must also look to the decision in Baldwin.
Baldwin and the 1979 amendment to section 830.6, read together, provide that design immunity can be lost to the defendant public entity if the plaintiff can establish three elements: (1) the approved plan or design has become dangerous by reason of a change in physical conditions; (2) the public entity has actual or constructive notice of the dangerous condition thus created and (3) the public entity has had a reasonable period of time to obtain the funds and carry out the necessary remedial work to bring the property back into conformity with a reasonable design or plan, or the public entity is unable to remedy the dangerous condition due to practical impossibility or lack of funds and does not reasonably attempt to provide adequate warnings. (Compton v. City of Santee (1993) 12 Cal.App.4th 591, 598, 15 Cal. Rptr.2d 660.) As we now discuss, neither Baldwin nor section 830.6 states that any of these issues is for the court to decide.

*740 3. If Disputed Material Facts Exist As To The Applicability of the "Changed Conditions" Exception To Design Immunity They Must Be Resolved By A Jury

To recapitulate, there are three elements to design immunity under section 830.6 and there are three elements to its "changed conditions" exception. As to only one of these elements did the Legislature specify that the court (either trial or appellate) must make the determination. That is the third element of design immunity relating to the existence of substantial evidence of "reasonable approval" of the plan or design. No resolution of any conflicting facts presented by such evidence is permitted. The inquiry begins and ends with a determination, by the trial or appellate court, as to whether any substantial evidence exists. However, the Legislature did not place any such limitation or restriction on any of the other five elements.
Caltrans' contention that section 830.6 establishes an exception to the right to jury trial for factual issues presents an issue of statutory construction. The fundamental goal of statutory construction is to ascertain the intent of the Legislature so as to effectuate the purpose of the statute. (Code Civ. Proc., § 1859; People v. Pieters (1991) 52 Cal.3d 894, 898, 276 Cal.Rptr. 918, 802 P.2d 420.) The words of a statute ordinarily provide the most reliable indication of legislative intent. (Pacific Gas & Electric Co. v. County of Stanislaus (1997) 16 Cal.4th 1143, 1153, 69 Cal.Rptr.2d 329, 947 P.2d 291.) If there is no ambiguity in the language of a statute, we presume the Legislature meant what it said and the plain meaning governs. (People v. Loeun (1997) 17 Cal.4th 1, 9, 69 Cal.Rptr.2d 776, 947 P.2d 1313.) When one part of a statute contains a term or provision, the omission of that term or provision from another part of the statute indicates that the Legislature intended to convey a different meaning. (People v. Gardeley (1996) 14 Cal.4th 605, 621-622, 59 Cal. Rptr.2d 356, 927 P.2d 713; Lazar v. Hertz Corp. (1999) 69 Cal.App.4th 1494, 1504, 82 Cal.Rptr.2d 368.) A court cannot insert or omit words to cause the meaning of a statute to conform to a presumed intent that is not expressed. (Code Civ. Proc., § 1858; California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 633, 59 Cal.Rptr.2d 671, 927 P.2d 1175.)
Section 830.6 states that the court applies the substantial evidence standard to determine the reasonableness of the public entity's approval of the design. This provision expressly establishes a legal standard for the court to review the public entity's discretionary decision as to reasonableness. The statute does not establish a legal standard for the court to review the public entity's showing at trial or on pretrial motion as to the other elements of design immunity or as to issues concerning the loss of design immunity. Nor does it provide that the court can decide disputed factual issues in any manner. We conclude the language of the statute does not support Caltrans' position. (Grenier v. City of Irwindale, supra, 57 Cal.App.4th at p. 940, fn. 5, 67 Cal.Rptr.2d 454.)
We also find no support for Caltrans' position in the cases which consider the loss of design immunity. Notably, Baldwin does not suggest that the court can determine factual issues concerning loss of design immunity or that those issues can be treated as issues of law under the substantial evidence standard. The submission of the "changed conditions" elements to a jury does not involve second-guessing of a public entity and presents "[n]o threat of undue interference with discretionary decision-making...." (Baldwin, supra, 6 Cal.3d at p. 435, 99 Cal.Rptr. 145, 491 P.2d 1121.) When the trial court here reasoned that "[t]hese [i.e., the elements necessary to establish the existence of changed conditions] are legal questions for the same reasons that the third element in establishment was declared a legal question" (see last paragraph of fn. 4, ante), it simply ignored, and therefore contradicted, the Supreme Court's conclusion that, in determining "changed physical conditions, the *741 trier of fact will not simply be reweighing the same technical data and policy criteria which went into the original plan or design." (Baldwin, supra, 6 Cal.3d at p. 435, 99 Cal.Rptr. 145, 491 P.2d 1121, italics added.)
It is true that several cases state that all of the statutory elements necessary to establish design immunity are legal issues for the court to decide. (See, e.g., Alvarez v. State of California, supra, 79 Cal. App.4th at pp. 727-728, 95 Cal.Rptr.2d 719, citing Cameron v. State of California, supra, 7 Cal.3d at p. 325, 102 Cal.Rptr. 305, 497 P.2d 777; Higgins v. State of California, supra, 54 Cal.App.4th at pp. 184-185, 62 Cal.Rptr.2d 459, citing Uyeno v. State of California (1991) 234 Cal. App.3d 1371, 1376, 286 Cal.Rptr. 328; Uyeno, supra, 234 Cal.App.3d at p. 1376, 286 Cal.Rptr. 328, citing Cameron, supra, 7 Cal.3d at p. 325, 102 Cal.Rptr. 305, 497 P.2d 777, Muffett v. Royster (1983) 147 Cal.App.3d 289, 306, 195 Cal.Rptr. 73, and Mozzetti v. City of Brisbane (1977) 67 Cal.App.3d 565, 572, 136 Cal.Rptr. 751; Muffett, supra, 147 Cal.App.3d at pp. 306-307, 195 Cal.Rptr. 73, citing Mozzetti, supra, 67 Cal.App.3d 565, 136 Cal.Rptr. 751; Mozzetti supra, 67 Cal.App.3d at p. 572, 136 Cal.Rptr. 751, citing cf. Johnston v. County of Yolo (1969) 274 Cal.App.2d 46, 51-52, 79 Cal.Rptr. 33.) Some of these cases appear to state that design immunity applies if there is substantial evidence to support each element, regardless of conflicting evidence (Higgins v. State of California, supra, 54 Cal.App.4th at pp. 185-186, 62 Cal.Rptr.2d 459; Muffett v. Royster, supra, 147 Cal.App.3d at p. 307, 195 Cal.Rptr. 73; Sutton v. Golden Gate Bridge, Highway & Transportation Dist. (1998) 68 Cal.App.4th 1149, 1161, 81 Cal. Rptr.2d 155), while others are less explicit as to the standard of proof to be applied by the trial court to determine whether the evidence establishes causation and prior approval (see, e.g., Alvarez v. State of California, supra, 79 Cal.App.4th at p. 727, 95 Cal.Rptr.2d 719 ["Whether each element of design immunity exists is a question of law. (Cameron v. State of California (1972) 7 Cal.3d 318, 325, 102 Cal.Rptr. 305, 497 P.2d 777)"]; Uyeno v. State of California, supra, 234 Cal.App.3d at p. 1376, 286 Cal.Rptr. 328 ["When design immunity is raised as a defense, the trial court must rule on whether the evidence is sufficient to support it"]; Mozzetti v. City of Brisbane, supra, 67 Cal.App.3d at p. 573, 136 Cal.Rptr. 751 ["the trial court... rule[s] whether the evidence is sufficient to support the design immunity defense (cf. Johnston v. County of Yolo [citation omitted]"]). Nonetheless, the common origin of this purported rule of law appears to be found in Cameron v. State of California, supra, 7 Cal.3d at p. 318, 102 Cal.Rptr. 305, 497 P.2d 777, and Mozzetti v. City of Brisbane, supra, 67 Cal.App.3d at pp. 572-573, 136 Cal.Rptr. 751.
Cameron involved a dangerous highway curve. The trial court determined that the state was immune under section 830.6 and granted a directed verdict. (Cameron v. State of California, supra, 7 Cal.3d at p. 322, fn. 3, 102 Cal.Rptr. 305, 497 P.2d 777.) On appeal, the Supreme Court considered whether the state had established the elements of design immunity "as a matter of law" (Id. at pp. 324-325, 102 Cal.Rptr. 305, 497 P.2d 777), as would be necessary to support a directed verdict (Dailey v. Los Angeles Unified Sch. Dist. (1970) 2 Cal.3d 741, 745, 87 Cal.Rptr. 376, 470 P.2d 360). It concluded that the state had produced no evidence to show that the dangerous feature of the curve as constructed was part of the approved design. (Cameron v. State of California, supra, 7 Cal.3d at p. 326, 102 Cal.Rptr. 305, 497 P.2d 777.) Significantly, the court did not hold or even suggest that the elements of design immunity are issues of law for the court to decide apart from the particular requirements of a directed verdict.
Mozzetti involved streets and sidewalks with inadequate drainage which caused flooding to adjacent property. The trial court instructed the jury on the elements *742 of design immunity, and the jury found no immunity and awarded damages to the plaintiffs. (Mozzetti v. City of Brisbane, supra, 67 Cal.App.3d at pp. 569-572, 136 Cal.Rptr. 751.) The city appealed, arguing that the issues of prior approval and reasonableness were legal issues for the court and should not have been submitted to the jury. (Id. at p. 572, 136 Cal.Rptr. 751.) The appellate court agreed that "design immunity is a legal issue for the court." (Ibid.)[9] It stated that design immunity normally is raised by motion for summary judgment, nonsuit, or directed verdict, and that the court ruling on such a motion determines "whether the evidence is sufficient to support the design immunity defense (cf. Johnston v. County of Yolo [citation omitted]." (Id. at p. 573, 136 Cal.Rptr. 751.)[10]
The Mozzetti court concluded that the city had invited error by requesting the jury instruction and that it did not produce sufficient evidence to establish the elements of design immunity in any event, so the instruction should not have been given. (Mozzetti v. City of Brisbane, supra, 67 Cal.App.3d at pp. 573-575, 136 Cal.Rptr. 751.) Since the city had failed to produce evidence to support the elements of design immunity, the court did not apply the rule that subsequent cases appear to have gleaned from Mozzetti that the elements of design immunity are legal issues for the court to decide. To the extent Mozzetti states that rule the statement is dictum, and we decline to follow it.
The rule relied upon by Caltrans emerges from these ignoble beginnings and is expressed in numerous opinions without critical comment or explanation and without reference to the text of the statute which it purportedly serves. Guided by the language of section 830.6, we agree with the court in Grenier v. City of Irwindale, supra, 57 Cal.App.4th 931, 67 Cal.Rptr.2d 454, that only the issue of reasonableness is a legal issue for the court to decide, while causation and prior approval are factual issues for the trier of fact. (Grenier v. City of Irwindale, supra, 57 Cal.App.4th at p. 940 & fn. 5, 67 Cal. Rptr.2d 454; see Flournoy v. State of California (1969) 275 Cal.App.2d 806, 813, 80 Cal.Rptr. 485; Fisher, "Design Immunity for Public Entities"( 1991) 28 San Diego L.Rev. 241, 243.)
Most significantly, the cases specifically addressing the loss of design immunity when a public entity has established the defense in the first instance do not hold that the court can decide disputed factual issues concerning the loss of design immunity or that it can apply the substantial evidence standard to the public entity's showing notwithstanding contrary evidence. In each of those cases holding that the immunity persisted, the plaintiff had failed to present evidence supporting the elements of the changed conditions exception sufficient to create a triable issue of fact. (Alvarez v. State of California, supra, 79 Cal.App.4th at pp. 736-739, 95 Cal.Rptr.2d 719; Sutton v. Golden Gate Bridge, Highway & Transportation Dist, supra, 68 Cal.App.4th at pp. 1162-1164, 81 Cal.Rptr.2d 155; Dole Citrus v. State of California (1997) 60 Cal.App.4th 486, 492-493, 70 Cal.Rptr.2d 348; Grenier v. City of Irwindale, supra, 57 Cal.App.4th at p. 945, 67 Cal.Rptr.2d 454; Higgins v. State of California, supra, 54 Cal.App.4th at p. 188, 62 Cal.Rptr.2d 459; Compton v. City of Santee, supra, 12 Cal.App.4th at p. 598, 15 Cal.Rptr.2d 660; Ramirez v. City of Redondo Beach (1987) 192 Cal.App.3d 515, 527, 237 Cal.Rptr. 505; see Cameron v. *743 State of California, supra, 7 Cal.3d at p. 326, fn. 10, 102 Cal.Rptr. 305, 497 P.2d 777.) Thus, these cases do nothing more than support the proposition that the trial court is only free to resolve the question of loss of design immunity as a matter of law when there are no disputed material issues of fact.
As the record before us clearly reflects, and as the trial court expressly stated (and Caltrans does not dispute), that is not the case here. There was a substantial conflict in the evidence on the "changed conditions" elements and, contrary to the circumstances existing in the several cases relied upon by Caltrans, factual issues remained to be resolved with respect to such elements. Not even Caltrans argues that it would have been entitled to a summary judgment. On what basis then was the trial court justified in denying plaintiffs a jury trial to resolve these factual disputes? The language of section 830.6 neither requires nor permits such a result (except as to the third element of design immunity). Certainly, nothing in Baldwin supports such a result. Indeed, the Baldwin court's discussion of the rationale behind design immunity and the reasons why it must be subject to changed conditions strongly implies the contrary. (See Baldwin, supra, 6 Cal.3d at pp. 431-39, 99 Cal.Rptr. 145, 491 P.2d 1121.) Finally, none of the case authority cited by Caltrans supports its argument.
Plaintiffs had repeatedly requested a jury trial and were entitled to have the jury decide issues of fact unless otherwise provided by law. (Evid.Code, § 312.) Plaintiffs' right to a jury trial is enshrined in our constitution. "Trial by jury is an inviolate right and shall be secured to all...." (Cal. Const., art. I, § 16.) The denial of that right is reversible per se. (Martin v. County of Los Angeles (1996) 51 Cal.App.4th 688, 698, 59 Cal.Rptr.2d 303.) However, relying on the case of Windsor Square Homeowners Ass'n v. Citation Homes (1997) 54 Cal.App.4th 547, 62 Cal.Rptr.2d 818, Caltrans contends that the trial court properly denied plaintiffs a jury trial. We disagree.
Windsor Square presented the question of whether the factual issues raised by the defense of res judicata could be tried to the court, and not to a jury, even though it constituted a legal as opposed to an equitable defense. The Windsor Square court concluded that the plaintiff was not entitled to have this particular special defense tried to a jury. It explained its reason for this conclusion in terms which demonstrate why the case is of no help to Caltrans. "The issues are often mixed fact-law determinations, involving, for instance, the assertion of jurisdiction, a decision better made by the court alone. Ordinarily, the facts that need to be determined are fairly simplefor example, what the complaint alleges in the first action versus what the complaint alleges in the second action. The pleadings must be studied to determine what claims were or could have been raised, who were the parties sued, whether the party against whom the bar is asserted was in privity with a party to the prior suit, whether the prior adjudication was a judgment on the merits. While all these issues may have factual predicates, they are peculiarly legal determinations." (Id. at p. 557, 62 Cal.Rptr.2d 818; italics added.)
Thus, Windsor Square did not present disputed material factual issues to be resolved, but rather essentially legal issues which are the peculiar province of the court. As plaintiffs point out, the court in Windsor Square was faced with mixed fact-law questions involving jurisdiction issues, the meaning to be given to pleadings, the nature of claims which were or could have been made, the identity of parties, the existence of privity and whether a judgment had been on the merits. These are not issues, even though they may have some factual component, which are decided by juries. They are essentially legal determinations to be made by the court. It is therefore no surprise that the Windsor Square court concluded that the affirmative defense of res judicata was not a question which could properly be submitted to a jury. Such a conclusion, however, provides no authority for the position asserted by Caltrans in this case.
Here, the trial court did not purport to decide issues which were essentially legal *744 questions. To the contrary, what it decided were material factual issues going to the heart of Caltrans' immunity defense. Those questions involved (1) whether conditions have changed rendering the existing design dangerous, (2) whether the public entity had notice of such changed conditions and their impact and (3) whether the public entity had a reasonable length of time in order to remedy the design. These issues are nothing like those presented to the Windsor Square court. The trial court's conclusion that this presented a "mixed bag of factual and legal issues" which it alone could properly resolve was not correct. Its ruling denying plaintiffs a jury trial was error and we will therefore reverse and remand for a new trial.

DISPOSITION
The judgment is reversed and the matter is remanded for a new trial in accordance with the views expressed herein. The plaintiffs shall recover their costs on appeal.
KITCHING, J., and ALDRICH, J., concur.
NOTES
[1] See footnote 7, post.
[2] There is no dispute as to the facts which we recite. We are simply presented with a pure question of law which we resolve de novo.
[3] Code of Civil Procedure section 597 provides in relevant part that when an "answer ... sets up any other defense not involving the merits of the plaintiffs cause of action but constituting a bar ... to the prosecution thereof, the court may, either upon its own motion or upon the motion of any party, proceed to the trial of the special defense or defenses before the trial of any other issue in the case, and if the decision of the court, or the verdict of the jury, upon any special defense so tried (other than the defense of another action pending) is in favor of the defendant pleading the same, judgment for the defendant shall thereupon be entered and no trial of other issues in the action shall be had unless that judgment shall be reversed on appeal or otherwise set aside or vacated...."
[4] In its Statement of Decision, the trial court set forth its reasoning:

"(9) With respect to proving loss of design immunity, after it having been established, the parties agreed that the Plaintiffs had the burden to show sufficient facts on the following three issues: [¶] (1) Notice of changed conditions/circumstances; (I.e., the original plan or design was no longer safe.) [¶] (2) The State had more than a reasonable time to remedy the situation: (I.e., time to plan and install a barrier of some type.) [¶] (3) The State had the means to afford remedial efforts. (I.e., a funding source available.) [¶] ... [¶]
"(11) As the statute [Gov.Code, § 830.6] clearly reads, it is based on case law saying that juries should not second-guess duly authorized executive or legislative decisions respecting the acceptance of reasonable standards, designs, or plans of public construction. Therefor [sic], it is the court's function, to decide as a matter of law, the third issue needed to establish design immunity, i.e., `reasonableness of the plan.' Both sides had no quarrel with this proposition. It is submitted some cases say the first two elements of establishment are factual issues; however, [Caltrans] goes farther and suggests cases saying that, despite the factual issues in the first two elements, not only is it the court's duty to decide all three elements for establishment, but that it is error to submit any of those issues to a jury. [¶] ... [¶]
"(14) In their briefs, Plaintiffs have urged the court to adopt the position that all issues pertaining to the loss of design immunity are questions of fact which should be decided by a jury. [Caltrans] contends that case law directs that all such `loss' issues, factual or legal, should be decided by the court. [Caltrans] also represents that there are no cases requiring submission of any loss issues to a jury.
"(15) The court sides with the argument of [Caltrans] that the court should be the arbiter of all issues respecting loss of immunity consistent with its position that it should decide all factual and legal issues respecting establishment.
"(16) To paraphrase the language of the second and third sentences of Government Code Section 830.6 ... [see fn. 7, post], they say immunity continues for a reasonable time so that the entity can obtain funds to carry out the work in conformity to plans or design approved by the legislative body of the public entity or other body, or, in accordance with standards previously approved. If the task is of practical impossibility or the entity lacks sufficient funds, immunity still continues as long as the entity makes reasonable attempts to provide adequate warnings of the condition, [¶] ... [¶]
"(18) The court concedes that there are factual issues contained in the second and third sentences referred to; such as a reasonable time to do the work (assuming properly scrutinized plans and funding) and, if unable to fund the work, to post warnings that are adequate. However, as prior case law reasons, it would be inappropriate to allow a jury to second-guess an authorized executive decision whether a reasonable public employee could have approved the plan or design or the standards therefor required in the remedial work (from element three in "establishment") or, how to best fund a project (a legislative decision). These are legal questions for the same reasons that the third element in establishment was declared a legal question. That the legislature did not declare parts of the second and third sentence in 1979 as strictly legal issues does not mean that prior case reasoning should not be applied to interpret the legislative intent of those additions in view of the similarity of language used." (Italics added.)
[5] Indeed, the record reflects, and the trial court formally conceded, that there was conflict in the testimony over the proper way to compute the number of accidents which would overcome Caltrans' statistical standard threshold, where they were located, and the time frame involved. There was even a dispute over whether increasing vehicle volumes exceeded Caltrans' established standards for median width and the interpretation of charts in federal and state manuals regarding volume/width standards.
[6] All further statutory references are to the Government Code unless otherwise stated.

Government Code section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."
[7] Section 830.6 provides: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor. Notwithstanding notice that constructed or improved public property may no longer be in conformity with a plan or design or a standard which reasonably could be approved by the legislative body or other body or employee, the immunity provided by this section shall continue for a reasonable period of time sufficient to permit the public entity to obtain funds for and carry out remedial work necessary to allow such public property to be in conformity with a plan or design approved by the legislative body of the public entity or other body or employee, or with a plan or design in conformity with a standard previously approved by such legislative body or other body or employee. In the event that the public entity is unable to remedy such public property because of practical impossibility or lack of sufficient funds, the immunity provided by this section shall remain so long as such public entity shall reasonably attempt to provide adequate warnings of the existence of the condition not conforming to the approved plan or design or to the approved standard. However, where a person fails to heed such warning or occupies public property despite such warning, such failure or occupation shall not in itself constitute an assumption of the risk of the danger indicated by the warning."

This is how the section presently reads. Prior to 1979, it did not contain the second and third sentences. As we explain, the Legislature added those two sentences to section 830.6 in 1979 in response to a limiting construction of old section 830.6 by the Supreme Court.
[8] The legislative history of the 1979 amendment to section 830.6 indicates that it was "intended to respond to Baldwin by providing a reasonable extension of design immunity when, under Baldwin, that immunity otherwise would be lost." (Alvarez v. State of California, supra, 79 Cal.App.4th at p. 737, 95 Cal.Rptr.2d 719, italics added.)
[9] However, the court did not clearly state that both prior approval and reasonableness are legal issues, but only that "design immunity is a legal issue for the court." (Mozzetti v. City of Brisbane, supra, 67 Cal.App.3d at p. 572, 136 Cal.Rptr. 751.)
[10] Johnston involved a dangerous road curve. The trial court refused the county's proposed design immunity instruction, and the jury awarded damages to the plaintiff. (Johnston v. County of Yolo, supra, 274 Cal.App.2d at pp. 48-51, 79 Cal.Rptr. 33.) On appeal, the court concluded that the evidence was undisputed that the county did not approve the road design. (Id. at pp. 54-55, 79 Cal.Rptr. 33.) The court did not hold or suggest that the elements of design immunity are legal issues for the court to decide.